UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| VALVE CORPORATION,<br><br>　　　　　Petitioner,<br><br>　　v.<br><br>ALEC BIRENBAUM,<br><br>　　　　　Respondent. | No.<br><br>**PETITION TO VACATE ARBITRATION AWARD**<br><br>**NOTING DATE: OCTOBER 31, 2025** |

PETITION

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................................................ ii

INTRODUCTION .................................................................................................................................1

THE PARTIES.......................................................................................................................................1

JURISDICTION AND VENUE ............................................................................................................1

ARGUMENT .........................................................................................................................................2

I. THE COURT SHOULD VACATE THE AWARD BECAUSE THE PARTIES DID NOT AGREE TO ARBITRATE ..........................................................................................2

    A. RESPONDENT AGREED TO THE CONTROLLING SSA ............................................2

    B. VALVE SOUGHT TO ENJOIN THE ARBITRATION AND OBJECTED TO THE ARBITRATION.......................................................................................................4

    C. UNDER THE CONTROLLING SSA, THERE IS NO AGREEMENT TO ARBITRATE .......................................................................................................................5

II. THE ARBITRATION VIOLATED VALVE'S DUE PROCESS RIGHTS ................................5

III. THE AWARD WAS ARBITRARY AND IRRATIONAL............................................................8

IV. CONCLUSION...........................................................................................................................11

PETITION - i

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

# TABLE OF AUTHORITIES

**CASES**

*Aspic Engineering & Construction Co. v. ECC Centcom Constructors LLC*,
    913 F.3d 1162 (9th Cir. 2019) ................................................................................................8

*Binta B. ex rel. S.A. v. Gordon*,
    710 F.3d 608 (6th Cir. 2013) ..................................................................................................9

*Blum v. Stenson*,
    465 U.S. 886 (1984)..............................................................................................................11

*Bozek v. PNC Bank*,
    2020 WL 6581491 (E.D. Pa. Nov. 10, 2020),
    *aff'd* 2021 WL 4240359 (3d Cir. Sept. 17, 2021)..................................................................2

*In re Briscoe Protective, LLC v. North Fork Surgery Center, LLC*,
    215 A.D.3d 956 (N.Y. App. Div. 2023) .................................................................................8

*In re Classmates.com Consolidated Litigation*,
    2012 WL 3854501 (W.D. Wash. June 15, 2012)...................................................................7

*Coinbase, Inc. v. Suski*,
    602 U.S. 143 (2024)................................................................................................................2

*Costco Wholesale Corp. v. International Brotherhood of Teamsters, Local No. 542*,
    850 F. App'x 467 (9th Cir. 2021) ...........................................................................................5

*Dasher v. RBC Bank (USA)*,
    745 F.3d 1111 (11th Cir. 2014) ..............................................................................................5

*Dlugolecki v. PeopleConnect, Inc.*,
    2020 WL 13587803 (C.D. Cal. Nov. 9, 2020)........................................................................4

*Enderlin v. XM Satellite Radio Holdings, Inc.*,
    2008 WL 830262 (E.D. Ark. Mar. 25, 2008) .........................................................................5

*Goetsch v. Shell Oil Co.*,
    197 F.R.D. 574 (W.D.N.C. 2000)...........................................................................................5

*Gonter v. Hunt Valve Co.*,
    510 F.3d 610 (6th Cir. 2007) ..................................................................................................8

*Grant v. Lockett*,
    605 F. Supp. 3d 399 (N.D.N.Y. 2022) ..................................................................................11

PETITION - ii

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

*Grant v. T-Mobile USA, Inc.*,
   2024 WL 3510937 (W.D. Wash. July 23, 2024) ............................................................. 3

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983) ..................................................................................................... 7

*Jones v. Sinaloence Food Products & Services, Inc.*,
   2023 WL 5504934 (C.D. Cal. June 8, 2023) ............................................................... 10

*Laster v. T-Mobile USA, Inc.*,
   2008 WL 5216255 (S.D. Cal. Aug. 11, 2008) ............................................................... 5

*Lawler v. Johnson*,
   253 So.3d 939 (Ala. 2017) ............................................................................................ 7

*Magill v. DIRECTV, LLC*,
   2017 WL 8894320 (C.D. Cal. June 23, 2017) .............................................................. 9

*In re Marriage of Tognoni*,
   313 P.3d 655 (Colo. App. 2011) ................................................................................... 7

*McCumbee v. M Pizza, Inc.*,
   2023 WL 2725991 (N.D. W. Va. Mar. 30, 2023) ......................................................... 5

*Mohamed v. Barr*,
   562 F. Supp. 3d 1128 (E.D. Cal. Jan. 19, 2022) .................................................... 9, 11

*Moonshadow Mobile, Inc. v. Labels & Lists, Inc.*,
   2024 WL 5056906 (D. Or. Dec. 9, 2024) ..................................................................... 5

*Morgan Keegan & Co. v. McPoland*,
   829 F. Supp. 2d 1031 (W.D. Wash. 2011) .................................................................... 2

*Move, Inc. v. Citigroup Global Markets, Inc.*,
   840 F.3d 1152 (9th Cir. 2016) ...................................................................................... 5

*Mullane v. Central Hanover Bank & Trust Co.*,
   339 U.S. 306 (1950) ..................................................................................................... 5

*Nadarajah v. Holder*,
   569 F.3d 906 (9th Cir. 2009) ...................................................................................... 10

*In re National Football League's Sunday Ticket Antitrust Litigation*,
   2021 WL 2350814 (C.D. Cal. Apr. 20, 2021) .............................................................. 5

*Neil v. Commissioner of Social Security*,
   495 F. App'x 845 (9th Cir. 2012) ............................................................................... 10

PETITION - iii

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

*Oberstein v. Live Nation Entertainment, Inc.*,
    60 F.4th 505 (9th Cir. 2023) .................................................................................................4

*Patrick v. Running Warehouse, LLC*,
    93 F.4th 468 (9th Cir. 2024) .................................................................................................3

*Pilon v. Discovery Communications, LLC*,
    769 F. Supp. 3d 273 (S.D.N.Y. 2025) ................................................................................4, 5

*Porzig v. Dresdner, Kleinwort, Benson, North America LLC*,
    497 F.3d 133 (2d Cir. 2007) .................................................................................................9

*QC Manufacturing, Inc. v. Solatube International, Inc.*,
    2022 WL 22879571 (C.D. Cal. Jan. 18, 2022) .....................................................................7

*Sadlock v. Walt Disney Co.*,
    2023 WL 4869245 (N.D. Cal. July 31, 2023) .......................................................................4

*Saeedy v. Microsoft Corp.*,
    757 F. Supp. 3d 1172 (W.D. Wash. Nov. 21, 2024) .............................................................3

*Tirona v. State Farm Mutual Automobile Insurance Co.*,
    821 F. Supp. 632 (D. Haw. 1993) .........................................................................................9

*Transcontinental Gas Pipe Line Co. v. Permanent Easement for 2.59 Acres*,
    2019 WL 6481528 (M.D. Pa. Oct. 8, 2019), *aff'd* 834 F. App'x 752 (2020) .....................2

*Trethewey v. Trethewey*,
    104 Mass. App. Ct. 114 (Mass. App. 2024) .........................................................................7

*United States ex rel. Sheppard v. Pathway of Baldwin County, LLC*,
    2025 U.S. Dist. LEXIS 52380 (S.D. Ala. Mar. 21, 2025) ...................................................11

*Welch v. Metropolitan Life Insurance Co.*,
    480 F.3d 942 (9th Cir. 2007) ...............................................................................................11

*West v. Uber Technologies*,
    2018 WL 5848903 (C.D. Cal. Sept. 5, 2018) ........................................................................4

**STATUTES**

9 U.S.C. § 10(a)(3) ........................................................................................................................5

9 U.S.C. § 10(a)(4) ........................................................................................................................2

15 U.S.C. § 15(a) ..........................................................................................................................8

PETITION - iv

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

## INTRODUCTION

1. Pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 10, Petitioner Valve Corporation requests that this Court vacate the final arbitration award (the "Award") issued by Arbitrator Suzanne McSorley (the "Arbitrator") in the arbitration proceeding before the American Arbitration Association captioned *Birenbaum v. Valve Corp. DBA* Steam, AAA Case No. 012300053145 (the "Arbitration").[1]

2. The Arbitrator held a hearing even though the parties had no agreement to arbitrate. The Arbitrator then issued an Award that included a small amount of damages and an excessive attorneys' fee award that "dwarfed" those damages—the fee award is nearly 10,000 times the damages awarded—based on Respondent's counsel's submission of timesheets. In violation of Valve's due process rights, Valve was not afforded an opportunity to respond to Respondent's counsel's fee request after it was submitted. The Award should be vacated because (i) the Arbitrator had no jurisdiction to conduct the arbitration, and, separately, (ii) the Arbitrator deprived Valve of a fundamentally fair hearing.

## THE PARTIES

3. Petitioner Valve is a Washington corporation with its principal place of business in King County, Washington. Valve offers an online platform called Steam, where consumers can purchase, play, and interact about video games.

4. Respondent Alec Birenbaum is an individual and resident of Glen Rock, New Jersey. Respondent alleges that he is a Steam user.

## JURISDICTION AND VENUE

5. This Court has jurisdiction under 28 U.S.C. § 1332(a) because the aggregate amount in controversy exceeds $75,000 exclusive of interest and costs and Valve and Respondent are citizens of different states.

6. Venue is proper pursuant to the forum selection clause in Section 10 of the agreement

---

[1] The Arbitrator entered substantively identical Awards in the two arbitrations before her that have proceeded to award. Valve is seeking to vacate both awards.

PETITION - 1

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

between the parties. (Ex. B § 10.)[2]

7. This Court has personal jurisdiction over Respondent under Section 10 of the agreement between the parties. (Ex. B § 10.)

# ARGUMENT

**I.   The Court Should Vacate the Award Because the Parties Did Not Agree to Arbitrate[3]**

8. The FAA provides that a court "may make an order vacating the award . . . where the arbitrators exceeded their powers." 9 U.S.C. § 10(a)(4). An arbitrator exceeds her powers by issuing an award when the parties have no agreement to arbitrate. *Bozek v. PNC Bank*, 2020 WL 6581491, at *5 (E.D. Pa. Nov. 10, 2020), *aff'd* 2021 WL 4240359 (3d Cir. Sept. 17, 2021); *accord Morgan Keegan & Co. v. McPoland*, 829 F. Supp. 2d 1031, 1036 (W.D. Wash. 2011).

9. Here, months before the Arbitrator set this matter for hearing, Respondent agreed to the Controlling SSA, described below. The Controlling SSA has no arbitration agreement and requires resolution of all claims and disputes, including pending disputes, in court. Upon Respondent's agreement to the Controlling SSA, the Arbitrator had no authority to continue with the Arbitration or issue the Award. Accordingly, the Award must be vacated. *Transcon. Gas Pipe Line Co. v. Permanent Easement for 2.59 Acres*, 2019 WL 6481528, at *2 (M.D. Pa. Oct. 8, 2019) *aff'd* 834 F. App'x 752 (2020); *see also Coinbase, Inc. v. Suski*, 602 U.S. 143, 145 (2024) ("[D]isputes are subject to arbitration if, and only if, the parties actually agreed to arbitrate those disputes.").

   **A.   Respondent Agreed to the Controlling SSA**

10. Valve and Respondent had an arbitration agreement in October 2023 when Respondent filed his arbitration demand against Valve. That arbitration agreement was part a prior Steam Subscriber Agreement ("SSA") that went into effect on April 25, 2023 (the "Superseded SSA"). (Ex. A.)

11. The Superseded SSA provided: "This Agreement may at any time be mutually amended

---

[2] All references to "Ex." followed by a numbered exhibit refer to exhibits to the Declaration of Blake Marks-Dias, dated October 10, 2025 ("Marks-Dias Decl."). All references to "Ex." followed by a lettered exhibit refer to exhibits to the Declaration of Scott Lynch, dated October 10, 2025 ("Lynch Decl."). All emphases are added and internal citations, quotations, and alterations are omitted unless otherwise stated.

[3] This issue is before this Court in *Valve Corp. v. Abbruzzese*, No. 2:24-cv-01717-JNW (W.D. Wash. filed Oct. 18, 2024). Discussion of other issues particular to this individual begins below, Part II.

PETITION - 2

Corr Cronin LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

by your explicit consent to changes proposed by Valve." (Ex. A § 8(A).)

12.　　The Superseded SSA further provided:

> Valve may amend this Agreement . . . unilaterally at any time in its sole discretion. In this case, you will be notified by e-mail of any amendment to this Agreement made by Valve at least 30 . . . days before the effective date of the amendment. You can view the Agreement at any time at http://www.steampowered.com/. Your failure to cancel your Account prior to the effective date of the amendment will constitute your acceptance of the amended terms. If you don't agree to the amendments or to any of the terms in this Agreement, your only remedy is to cancel your Account or to cease use of the affected Subscription(s).

(Ex. A § 8(B).)

13.　　Subsequently, on September 26, 2024, Valve removed the arbitration provision and the class action waiver from the SSA. The current SSA (the "Controlling SSA") now provides exclusively for resolution of disputes in court, including pending disputes. (Ex. B § 10.) It also includes a merger clause providing that it supersedes and replaces the parties' prior agreement. (*Id.* § 11.)

14.　　Beginning on September 26, 2024, pursuant to the amendment and notice provisions contained in the SSA, Valve provided conspicuous notice of the Controlling SSA to Respondent, including by email and through a pop-up that appeared when users logged into the Steam client or website. (Lynch Decl. ¶¶ 7-19.)

15.　　For online transactions, "mutual assent" to transaction terms "'turns on whether the consumer had reasonable notice of the terms of service agreement.'" *Grant v. T-Mobile USA, Inc.*, 2024 WL 3510937, at *3 (W.D. Wash. July 23, 2024). For notice to be "reasonably conspicuous," it must be displayed in a "'font size and format such that the court can fairly assume that a reasonably prudent Internet user would have seen it.'" *Saeedy v. Microsoft Corp.*, 757 F. Supp. 3d 1172, 1195 (W.D. Wash. Nov. 21, 2024); *accord Patrick v. Running Warehouse, LLC*, 93 F.4th 468, 477 (9th Cir. 2024). Valve's notice was conspicuous and consistent with the modification requirements in the Superseded SSA. (Lynch Decl. ¶¶ 7-19; Ex. A § 8(B).)

16.　　Respondent assented to the Controlling SSA through his continued use of Steam. Users manifest assent to updated terms if they continue to use a service after receiving notice of those terms.

PETITION - 3

*See, e.g., Pilon v. Discovery Commc'ns, LLC*, 769 F. Supp. 3d 273, 289-90 (S.D.N.Y. 2025) (claimant assented where he "continued to subscribe to and use [service]" after receiving notice of updated agreement); *Sadlock v. Walt Disney Co.*, 2023 WL 4869245, at *12 (N.D. Cal. July 31, 2023) ("[E]mails followed by continued use is sufficient to establish assent."); *Dlugolecki v. PeopleConnect, Inc.*, 2020 WL 13587803, at *2 (C.D. Cal. Nov. 9, 2020) (similar); *West v. Uber Techs.*, 2018 WL 5848903, at *5 (C.D. Cal. Sept. 5, 2018) (similar). Respondent is bound by the Controlling SSA pursuant to the email and pop-up notices provided to him because he did not delete or discontinue use of his Steam account by November 1, 2024. (Lynch Decl. ¶¶ 22-23.) To the contrary, Respondent logged into Steam on November 17, 2024, and on more than 30 other occasions between that date and January 17, 2025. (*Id.* ¶ 24.)

17. In addition, Respondent assented to the Controlling SSA by affirmatively clicking a button to accept the new terms. Users manifest assent if they click a button to indicate acceptance of terms. *Saeedy*, F. Supp. 3d at 1196-97; *accord Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 516 (9th Cir. 2023). On January 17, 2025, Respondent affirmatively accepted the Controlling SSA when making a purchase on Steam by checking the box next to "I agree to the terms of the Steam Subscriber Agreement (last updated Sep 26, 2024)" and clicking the "Purchase" button. (Lynch Decl. ¶ 25.)

**B.    Valve Sought to Enjoin the Arbitration and Objected to the Arbitration**

18. Because the Controlling SSA removed the parties' arbitration agreement and applied retroactively, on October 18, 2024, Valve commenced an action in this Court to enjoin 624 recently-commenced arbitrations, including Respondent's. *See Valve Corp. v. Abbruzzese*, No. 2:24-cv-1717 (W.D. Wash. filed Oct. 18, 2024). Valve also promptly notified the Arbitrator and requested that the Arbitrator stay Respondent's Arbitration pending resolution of the *Abbruzzese* action. (Ex. 2.)

19. On October 27, 2024, the Arbitrator denied Valve's motion to stay Respondent's Arbitration. (Ex. 3.) Valve defended itself in further proceedings under a full reservation of rights. (Marks-Dias Decl. ¶ 8.) The Arbitrator held merits hearings on Respondent's claims over Valve's objections. (*Id.* ¶ 9.) The Arbitrator issued the Award on October 9, 2025, and transmitted it on October 10, 2025. (Ex. 5.)

PETITION - 4

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

### C. Under the Controlling SSA, There Is No Agreement To Arbitrate

20. Under the Controlling SSA, the parties had no agreement to arbitrate. A dispute resolution provision in an updated agreement is enforceable with respect to already-asserted claims when the provision provides for retroactive effect. *Dasher v. RBC Bank (USA)*, 745 F.3d 1111, 1127 (11th Cir. 2014).[4] Here, Respondent agreed that the Controlling SSA would replace and supersede his prior agreement to arbitrate and apply retroactively to his claim. (Ex. B §§ 10-11; Lynch Decl. ¶¶ 22-25.)

21. Therefore, at the time of the arbitral hearing (and well beforehand), the parties had no agreement to arbitrate, and the Arbitrator had no authority to issue the Award. That Award should accordingly be vacated.

## II. The Arbitration Violated Valve's Due Process Rights

22. The Arbitrator's Award, which primarily consists of a substantial attorneys' fee award, should also be vacated because the proceedings deprived Valve of due process.

23. A court may vacate an award when the arbitrator "refuse[s] to hear evidence pertinent and material to the controversy; or [because] of any other misbehavior by which the rights of any party have been prejudiced." 9 U.S.C. § 10(a)(3). "In determining whether an arbitrator's misbehavior or misconduct prejudiced the rights of the parties, [the court asks] whether the parties received a fundamentally fair hearing." *Move, Inc. v. Citigroup Glob. Mkts., Inc.*, 840 F.3d 1152, 1158 (9th Cir. 2016); *see also Costco Wholesale Corp. v. Int'l B'hood of Teamsters, Loc. No. 542*, 850 F. App'x 467, 468 (9th Cir. 2021) ("[A]n arbitration award may be vacated if the proceedings violate the rule of fundamental fairness.").

24. To be fundamentally fair, an arbitration must provide due process—*i.e.*, meet the "'minimal requirements of fairness—adequate notice, a hearing on the evidence, and an impartial decision by the arbitrator.'" *Moonshadow Mobile, Inc. v. Labels & Lists, Inc.*, 2024 WL 5056906, at *6 (D. Or. Dec. 9, 2024); *see also Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)

---

[4] *Accord Pilon v. Discovery Commc'ns, LLC,* 769 F. Supp. 3d 273, 289-90 (S.D.N.Y. Mar. 10, 2025); *In re Nat'l Football League's Sunday Ticket Antitrust Litig.*, 2021 WL 2350814, at *4 (C.D. Cal. Apr. 20, 2021); *Laster v. T-Mobile USA, Inc.*, 2008 WL 5216255, at *6 (S.D. Cal. Aug. 11, 2008); *Enderlin v. XM Satellite Radio Holdings, Inc.*, 2008 WL 830262, at *7 (E.D. Ark. Mar. 25, 2008); *Goetsch v. Shell Oil Co.*, 197 F.R.D. 574, 577 (W.D.N.C. 2000); *McCumbee v. M Pizza, Inc.*, 2023 WL 2725991, at *10 (N.D. W. Va. Mar. 30, 2023).

PETITION - 5

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

(describing "elementary" requirements of due process, including "an opportunity to present [] objections").

25. The Award includes an attorneys' fee award of $645,719.93 on top of $22.11 in damages awarded to Respondent, which was trebled to $66.33. (Ex. 5.) On August 7, 2025, before the Arbitrator made that attorneys' fee award, Valve requested that any briefing on payment of attorneys' fees and costs be reserved until after the Arbitrator issued an award on the merits, so that any fee briefing could more accurately assess the scope of costs. (Ex. 6.)

26. On August 9, 2025, the Arbitrator denied Valve's request without explanation and ordered the parties to address "entitlement to attorneys' fees" in their post-hearing briefs on the merits, due August 26, 2025. (Ex. 7.) The order further provided that any party seeking attorneys' fees separately provide details regarding fees sought, including time records and billing rates, by September 5, 2025. (*Id.*) The Arbitrator's order did not provide the parties an opportunity to respond to any fee submission.

27. In its post-hearing brief submitted August 26, 2025, Valve objected to the August 9, 2025, order. Valve explained that it is Respondent's burden to "establish with sufficient documentation that the fees sought were reasonably expended." (Ex. 8 at 49.) Valve further reiterated its request that Valve was "entitled to review Claimants' request for fees and costs . . . **and subject it to adversarial testing**." (*Id.*) Valve also cited cases holding that a fee award entered where the opposing party has no opportunity to respond must be vacated. (*Id.* at 49 n.257.)

28. On September 10, 2025, Respondent's counsel submitted a fee "affidavit," as well as five files purporting to show time entries, rates, and costs associated with both arbitrations that proceeded to final hearings. (Exs. 9-14.) A file marked "Consolodated [sic] Timesheets for McSorley Fee App" contained more than 900 individual time entries from ten attorneys and four legal support staff purportedly in connection with both arbitrations. (Ex. 10.) Respondent sought a fee award of over $2 million, reflecting more than 1,800 hours of attorney time spanning multiple months, and more than $160,000 in costs. (Ex. 9.)

29. With respect to fee awards, "[d]ue process requires" that a party "be given an opportunity

PETITION - 6

to examine [] timesheets" so that it is able to "oppose recovery for unnecessary work." *QC Mfg., Inc. v. Solatube Int'l, Inc.*, 2022 WL 22879571, at *8 (C.D. Cal. Jan. 18, 2022). Despite Valve's request, the Arbitrator did not provide Valve an opportunity to respond to Respondent's counsel's fee submission. (Marks-Dias Decl. ¶¶ 12-13.) The Arbitrator declared the arbitration hearings "**CLOSED**" hours after Respondent submitted the fee submission. (Ex. 15.) Valve therefore could not test whether the hours claimed were "excessive, redundant, or otherwise unnecessary." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983).

30. The Arbitrator's failure to provide Valve an opportunity to respond to Respondent's request for fees deprived Valve of due process, and warrants vacating the Award. *See e.g., In re Classmates.com Consolidated Litig.*, 2012 WL 3854501, at *2 (W.D. Wash. June 15, 2012) ("[D]ue process require[s] that class members have an opportunity to consider and object to class counsel's complete motion for attorney fees."); *Lawler v. Johnson*, 253 So.3d 939, 952 (Ala. 2017) ("class members in this case were not afforded due process inasmuch as they were not allowed to view, consider, and respond to class counsel's attorney-fee application before they were required to file any objections to that application"); *In re Marriage of Tognoni*, 313 P.3d 655, 661 (Colo. App. 2011) (vacating fee award because party "was not afforded an opportunity to respond *before* attorney fees were awarded against him"); *Trethewey v. Trethewey,* 104 Mass.App.Ct. 114, 121 (Mass. App. 2024) (similar).

31. In the Award, the Arbitrator faulted Valve because it purportedly "did not object" to the Arbitrator's August 9, 2025 order that set a deadline for fee applications but did not allow for responses. (Ex. 5 at 13.) But the August 9, 2025 order did not invite objections. And two days prior, Valve requested that the Arbitrator order staged briefing that would permit the parties to respond to fee requests. (Ex. 6.) The Arbitrator rejected that request in the August 9, 2025 order.

32. In any event, Valve **did** object to the August 9, 2025, order. In Valve's post-hearing brief (the very next submission permitted under the August 9, 2025, order), Valve (i) objected to any award of fees entered without permitting Valve an opportunity to respond and (ii) requested an opportunity to respond—*i.e.*, that the Arbitrator subject any fee request to "adversarial testing." (Ex. 8 at 48-49.)

PETITION - 7

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

33. The Arbitrator acknowledges that Valve's objections "are certainly potentially reasonable" but claims they were "untimely." (Ex. 5 at 13-14.) But Valve made the objection **two weeks** before the (extended) September 10, 2025, deadline for any fee application, **two weeks** before the Arbitrator closed the record, and **well over a month** before the Arbitrator issued the Award on October 10, 2025. The objections were timely.

34. The Award emphasizes that the August 9, 2025, order mandated that the parties address in post-hearing briefing, due August 26, 2025, "all issues including <u>**entitlement to**</u> attorneys' fees." (Ex. 5 at 13.) But Valve was not ordered to address, nor could it have challenged, the **quantum or nature** of attorneys' fees requested without reviewing Respondent's counsel's fee application and the accompanying time records, which were not due until a week **after** post-hearing briefing.

### III. The Award Was Arbitrary and Irrational

35. The Award should also be vacated in its entirety because it was arbitrary and irrational. Section 10(a)(4) of the FAA provides for vacatur of an award that is "'completely irrational' or exhibits a 'manifest disregard of the law.'" *Aspic Eng'g & Constr. Co. v. ECC Centcom Constructors LLC*, 913 F.3d 1162, 1166 (9th Cir. 2019). Courts vacate entire arbitration awards where an arbitrator's attorneys' fee award is "irrational because it was not supported by any proof" as violative of "the strong public policy against excessive fees." *In re Briscoe Protective, LLC v. N. Fork Surgery Ctr., LLC*, 215 A.D.3d 956, 957-58 (N.Y. App. Div. 2023).

36. The Arbitrator's fee award is irrational and manifestly disregards the law. Successful antitrust plaintiffs may seek a "reasonable attorney's fee." 15 U.S.C. § 15(a). A reasonable fee is one that is "adequately compensatory to attract competent counsel yet which avoids producing a windfall for lawyers." *Gonter v. Hunt Valve Co.*, 510 F.3d 610, 616 (6th Cir. 2007). The amount the Arbitrator awarded far exceeds that amount. As the Arbitrator observed, "the amount of damages is dwarfed by the attorney's fees . . . incurred in pursuit of those damages." (Ex. 5 at 12.) The amount the Arbitrator awarded also far exceeds Respondent's counsel's own pre-litigation estimate. (*See* Marks-Dias Decl. ¶ 25; Ex. 16.)

37. Indeed, the timesheets Respondent submitted are replete with non-compensable entries,

PETITION - 8

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

which Valve would have demonstrated to the Arbitrator had it been given the opportunity to respond to Respondent's fee application.

38. Many of the time entries appear to represent charges for general mass arbitration work, such as "Bucher PLLC Weekly Meetings," "Team meetings re: arbitrations," or "Correspondence w/ Will re: AAA jurisdiction"—rather than for this Arbitration. (Marks-Dias Decl. ¶ 28.) The Superseded SSA permitted the Arbitrator to award relief "only to the extent of that party's individual claim," not for any other matters. (Ex. A § 11(D).) If "the arbitrator goes beyond that self-limiting agreement between consenting parties, it acts inherently without power, and an award ordered under such circumstances must be vacated." *Porzig v. Dresdner, Kleinwort, Benson, N. Am. LLC*, 497 F.3d 133, 140 (2d Cir. 2007). Courts similarly hold that fee awards cannot include work on other matters. *See Magill v. DIRECTV, LLC*, 2017 WL 8894320 at *3 (C.D. Cal. June 23, 2017) (rejecting the claim that "work done on behalf of several different plaintiffs with individual lawsuits, some indisputably unsuccessful, can be fully recovered through the victory of one such lawsuit"); *see also Binta B. ex rel. S.A. v. Gordon*, 710 F.3d 608, 631 (6th Cir. 2013) (awarding fees for work on other cases would create "all sorts of oddities, as illustrated by this case where counsel would be permitted to recover fees for thousands of hours of time spent litigating a case they *lost*"). Moreover, "[c]harges for duplicative work," let alone duplicative of other arbitrations, "are not recoverable." *See Tirona v. State Farm Mut. Auto. Ins. Co.*, 821 F. Supp. 632, 636 (D. Haw. 1993); s*ee also Mohamed v. Barr*, 562 F. Supp. 3d 1128, 1137 (E.D. Cal. Jan. 19, 2022) (reducing amounts excessively or double billed from attorney fee award).

39. These claimed fees for mass arbitration include work Respondent's counsel did for other arbitrations against Valve. As the Award notes, "much of the work included within the lodestar calculation is necessarily also applicable to the 22 matters which have not yet had a hearing." (Ex. 5 at 12.) The awarded fees also likely include work done in connection with the 43 arbitrations where claimants lost against Valve. No fees related to any of these or the thousands of other arbitrations Respondent's counsel is prosecuting are compensable.

40. The Award also likely includes fees that Respondent's counsel was already awarded in

Corr Cronin LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

other arbitrations. Respondent's counsel obtained fee awards from another arbitrator in four other arbitrations that cover fees for work "undertake[n] for any and all arbitrations" Respondent's counsel is prosecuting against Valve, including Respondent's arbitration. (*See* Marks-Dias Decl. ¶ 31.) The arbitrator in those proceedings violated Valve's due process rights because she issued her fee award based on secret time records submitted *ex parte* over Valve's objection, as set forth in Valve's petitions to vacate those awards. (*See id.*)[5] The Arbitrator compounded this error by not permitting Valve to test the time entries in this Arbitration to assess, among other things, the extent to which they sought duplicate recovery.

41. Clerical tasks are also not reimbursable. *See Nadarajah v. Holder,* 569 F.3d 906, 925 (9th Cir. 2009) (reducing fee award due to entries for clerical work). Yet the time entries also abound with clerical tasks, including clerical time entries billed by attorneys at attorneys' rates. (*See* Marks-Dias Decl. ¶¶ 36-39.)

42. Vague time entries are also not compensable. *See Neil v. Commissioner of Social Sec.*, 495 F. App'x. 845, 847 (9th Cir. 2012) (affirming reduction of fee award to account for vague time entry); *Jones v. Sinaloence Food Products and Services, Inc*, 2023 WL 5504934, at *3 (C.D. Cal. June 8, 2023) (refusing to award time for vague time entries). However, Respondent's timesheets likewise include myriad vague entries. (*See* Marks-Dias Decl. ¶¶ 33-35.)

43. Block billing is a "form of improper recording" in a fee application, warranting reduction in the amount awarded. *See Mohamed*, 562 F. Supp. 3d 1128 at 1136; *see also See Welch v. Metro. Life Ins. Co.,* 480 F.3d 942, 948 (9th Cir. 2007) (district court had "authority to reduce hours that are billed in block format"). The timesheets are replete with improper, non-compensable block billing, for which the Arbitrator nevertheless awarded fees. (*See* Marks-Dias Decl. ¶¶ 40-41.)

44. In addition, the hourly rates the Arbitrator applied are unreasonable. Courts assess reasonableness by benchmarking requested rates against "those prevailing in the community for similar

---

[5] Respondent's counsel refused to produce the time records in those matters on the purported basis that they were "privileged." *See, e.g.*, Fish Motion To Confirm Reply at 4, *Valve Corp. v. Abbruzzese*, No. 24-1717 (W.D. Wash. filed Oct. 7, 2025). But that was pretext: Respondent's counsel *did* produce time records in this and the other arbitration before the Arbitrator. Respondent's counsel made no claim of privilege here.

PETITION - 10

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984). Respondent's fee application ignored this legal standard. Respondent sought fees for Will Bucher using an hourly rate based on his work at a different firm, in a different (more expensive) city where he no longer works, to arrive at a rate of $970 per hour. (Ex. 9 at 5-7.) But Mr. Bucher is now the principal at Bucher Law PLLC, based in Albany, New York. (Ex. 1 at 1.) Albany is located within the Northern District of New York. A reasonable hourly rate for lawyers similarly-qualified to Mr. Bucher in Albany is between $250-$350, less than half the $970 he sought and obtained. *See Grant v. Lockett*, 605 F. Supp. 3d 399, 404 (N.D.N.Y. 2022). As to the associates, paralegals and law clerks working for Bucher Law PLLC, assuming that these employees are also based in Albany, under *Grant* their rates should have been no more than $200 for associates and $90 for paralegals. Yet Respondent sought and obtained multiples of those rates.

45. Respondent similarly made no effort to demonstrate that the rates charged by other attorneys were reasonable. For example, Respondent requested and obtained an hourly rate of $525 for Judson Crump, who has approximately 15 years of legal experience. (Ex. 9 at 7.) Crump resides in Silverhill, Alabama, which is within the Southern District of Alabama. The hourly rate there is about $350 for a very experienced litigator and around $250 for a lawyer with substantial experience. *U.S. ex rel. Sheppard v. Pathway of Baldwin Cnty., LLC*, 2025 U.S. Dist. LEXIS 52380, at *11 (S.D. Ala. Mar. 21, 2025).

46. All of these issues collectively render the Award arbitrary and irrational. And Valve had no opportunity to raise these issues in the Arbitration because the Arbitrator did not permit Valve to respond to Respondent's fee application.

## IV. CONCLUSION

47. For the foregoing reasons, Valve respectfully requests that the Court vacate the Award.

PETITION - 11

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

I certify that this memorandum contains 4,198 words, in compliance with the Local Civil Rules.

DATED this 10th day of October 2025.

*s/ Blake Marks-Dias*
Blake Marks-Dias, WSBA No. 28169
CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
(206) 625-8600 Phone
(206) 625-0900 Fax
bmarksdias@corrcronin.com

Michael W. McTigue Jr., *Pro Hac Vice Forthcoming*
Meredith Slawe, *Pro Hac Vice Forthcoming*
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001
michael.mctigue@skadden.com
meredith.slawe@skadden.com

*Attorneys for Petitioner Valve Corporation*

PETITION - 12

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900