HONORABLE JAMAL N. WHITEHEAD

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

VALVE CORPORATION,

        Petitioner,

    v.

ALEC BIRENBAUM,

        Respondent.

Case No. 2:25-cv-1975-JNW

RESPONDENT ALEC BIRENBAUM'S
RESPONSE TO PETITION TO VACATE
ARBITRATION AWARD

Respondent Alec Birenbaum ("**Mr. Birenbaum**"), through undersigned counsel, hereby responds to Petitioner Valve Corporation's ("**Valve**") Petition to Vacate Arbitration Award. Dkt. 1.

RESPONDENT ALEC BIRENBAUM'S RESPONSE TO
PETITION TO VACATE ARBITRATION AWARD – Page 1

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

TABLE OF CONTENTS

I. Introduction.................................................................................................3

II. Facts ........................................................................................................4

III. Legal Standard.........................................................................................7

IV. Argument .................................................................................................8

    A. Valve Accepted Arbitral Jurisdiction ...............................................8

    B. Valve's 2025 Bad Faith Amendment................................................8

    C. Valve's One-sided Amendment Does Not Affect the Award.........................10

        1. Valve's Participation Bars This Subsequent Challenge........................................11

        2. Valve's Contract Update Does Not Oust Arbitral Jurisdiction.............................11

        3. Unconscionable in Formation and in Substance, the Update Is Void or Severable ...........14

        4. Equity Precludes Valve's Attempt to Escape Arbitration .....................................18

        5. Valve Relies on Straw Men, Not Binding Precedent .....................................23

    D. Valve Wasn't Denied Due Process—Nor In Arbitration Is Valve
        Entitled to It .................................................................................29

    E. The Award Was Rational, Not Arbitrary .......................................32

V. Conclusion ...............................................................................................34

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

## I. INTRODUCTION

Valve's petition is as empty as it is audacious. Having chosen arbitration to avoid collective litigation, Valve now disowns the very forum it demanded after losing there. The FAA does not allow such relief based solely on regret. Instead, confirmation is mandatory unless a narrow statutory ground applies, and Valve identifies none.

Valve's first argument—that Mr. Birenbaum should have abandoned arbitration and re-filed his antitrust claims in court—is senseless. Valve unilaterally updated its consumer agreement mere weeks before the award, then dismissed its own declaratory-judgment action as to its previous amendment. It now offers no authority on why this new update binds Mr. Birenbaum or affects the arbitrator's jurisdiction. This is not a declaratory-judgment proceeding over tangential questions and Mr. Birenbaum's assent to the previous update remains disputed. Here, the Court is tasked with nothing more than a statutory review of an award that stands on firm legal ground.

Valve next claims it was denied due process because the arbitrator did not comb through billing entries line by line. But arbitration is not designed to mimic a federal trial. The Supreme Court and the federal Circuits have made clear that arbitration favors efficiency, not procedural perfection. Valve's reliance on stray authorities about child-support disputes in Colorado underscores the frivolity of its position.

RESPONDENT ALEC BIRENBAUM'S RESPONSE TO
PETITION TO VACATE ARBITRATION AWARD – Page 3

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

Finally, Valve insists the award is "arbitrary and capricious" because it disagrees with Mr. Birenbaum's fee award. It cites no authority, points to no legal error, and mistakes dissatisfaction for illegality. The award is reasoned, supported by the record, and squarely within the arbitrator's discretion.

In the end, Valve's petition is a stalling tactic—devoid of substance and designed to prolong a fight it already lost. The FAA does not tolerate endless litigation by sore losers. The Court should confirm the award and close this chapter for good.

## II. FACTS

Valve's Steam distributes PC games, which consumers are allegedly able to keep and play perpetually. Although users have accounts and Valve labels them as "subscribers," purchases are made in one-time payments for games. This process is like iTunes—pay once per song; not like Spotify—pay monthly for the whole library. User's who delete or lose their account lose their purchased games. These games often constitute thousands of dollars in purchases, and Valve is a monopolist in this market.

The Court is aware—and it is undisputed—that Mr. Birenbaum's antitrust claims were subject to arbitration under a pre-2024 version of Steam Subscriber Agreement ("SSA"). *See* Dkt. 1, ¶ 10; Dkt. 2 at 11–19; *Wolfire Games, LLC v. Valve Corp.*, No. 2:21-cv-00563-JCC, 2021 WL 4952220 (W.D. Wash. Oct. 25, 2021).

In October 2023, Mr. Birenbaum filed his demand for arbitration. *See* Dkt. 3 at 22–37. In that demand, he explained that he was proceeding pursuant to this

RESPONDENT ALEC BIRENBAUM'S RESPONSE TO
PETITION TO VACATE ARBITRATION AWARD – Page 4

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

Court's order in *Wolfire* and that he was in arbitration "at Valve's insistence." *Id*. at 25 n.4.

On September 26, 2024, Valve unilaterally amended the SSA (the "2024 amendment"). *See* Dkt. 1 ¶ 13.[1] Valve's sudden and unilateral 2024 amendment introduced a new forum-selection clause, which Valve describes as providing "for resolution of disputes in court, including pending disputes." Dkt. 1, ¶ 13. The clause reads:

> You and Valve agree that all disputes and claims between you and Valve (including any dispute or claim that arose before the existence of this or any prior agreement) shall be commenced and maintained exclusively in any state or federal court located in King County, Washington, having subject matter jurisdiction.

Dkt. 2 at 27, § 10.

Relying on that language, Valve objected to Arbitrator McSorley's jurisdiction via a letter requesting a stay of 24 individual arbitrations, including Mr. Birenbaum's, pending resolution of this Court's proceeding in *Valve v. Abruzze*, 2:24-cv-1717-JNW (W.D. Wash). Dkt. 3 at 39. On October 27, 2024, Arbitrator McSorley denied Valve's request in relevant part as follows:

> Despite its active participation in these arbitration proceedings, Respondent now seeks to remove these matters from arbitration, contending that there are two contracts governing its relationship with each of the Claimants with different dispute resolution clauses, and that, under *Coinbase, Inc. v. Suski*, 144 S. Ct 1186 (2024), such a conflict can only be resolved by a Court.

---

[1] The SSA authorizes two forms of amendment: mutual and unilateral. *See* Dkt. 2 at 17, § 8. Mutual amendments require "explicit consent to changes proposed by Valve." *Id*. § 8.A. Unilateral amendments are allowed only if Valve follows specific procedural formalities. *Id*. § 8.B. Valve did not follow these procedural formalities.

RESPONDENT ALEC BIRENBAUM'S RESPONSE TO
PETITION TO VACATE ARBITRATION AWARD – Page 5

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

These arbitrations do not present a situation to which *Coinbase* applies. Respondent's motion is DENIED. Unlike the situation in *Coinbase*, there is and was only one contract governing the relationship between the parties at the time the parties commenced these arbitrations and, for nearly a year, Respondent has participated actively in the arbitration proceedings. (It is important to note that Respondent has also not provided any evidence that any of these Claimants in fact has taken any step to indicate acceptance of the terms posted by Respondent at some point before September 27, 2024, raising a question of fact as to whether there is any second contract at all).

Dkt. 3 at 43. Valve's allegation that it "defended itself in further proceedings under a full reservation of rights" is factually false. Valve didn't "reserve" its right to challenge jurisdiction—it invoked it. McSorley decided the issue, at Valve's request. Valve lost.

Valve alleges that Mr. Birenbaum assented to the 2024 amendment by continued use after November 1, 2024, logging into the Steam platform on November 17, 2024, and completing a purchase on January 17, 2025. Dkt. 2, ¶¶ 22–25.

On September 18, 2025, Valve updated the SSA again. Dkt. 2, ¶ 6 n.1 ("2025 amendment"). Valve, however, claims that "update did not modify the dispute resolution provision for U.S. customers and is not relevant to this petition." *Id*. Valve provides no facts regarding (i) whether it was a unilateral amendment or (ii) whether Mr. Birenbaum assented to the 2025 amendment.

On October 9, 2025, Arbitrator McSorely issued a final award. Dkt. 3 at 52–66. She concluded that Valve unreasonably restrained trade in violation of Section

RESPONDENT ALEC BIRENBAUM'S RESPONSE TO
PETITION TO VACATE ARBITRATION AWARD – Page 6

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

1 of the Sherman Act. Dkt. 3 at 56–59. She awarded $66.33 in damages, $645,719.93 in attorneys' fees, and $81,444.91 for litigation expenses.

Many arbitrations are occurring in parallel. None apply the same procedures—for example, Valve prevailed in arbitrations before Arbitrator Saydah who refused to enforce subpoenas for Valve's employees, resulting in a hearing with limit testimony on Valve's monopoly. Thus, on February 24, July 24, and September 24, 2025, Valve filed numerous petitions in Washington state court to confirm the awards which it *won,* while simultaneously dismissing those Respondents from its complaint before this Court, in which it had previously sought to *enjoin* those Respondents' arbitrations. *See Valve v. Abruzze,* 2:24-cv-1717-JNW (W.D. Wash), Dkts. 54, 75, 98.

### III. LEGAL STANDARD

Under Section 9 of the Federal Arbitration Act, the Court must confirm an arbitration award unless it is vacated, modified, or corrected as prescribed in §§ 10 or 11. *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 582 (2008). The statute's command is mandatory: confirmation follows unless Congress has said otherwise. Judicial review of an arbitration award is "limited and highly deferential." *Haines v. Amazon.com Servs.*, 766 F. Supp. 3d 1120, 1124 (W.D. Wash. 2025). Legal or factual mistakes alone do not justify setting an award aside. *Id*. The party opposing confirmation bears the burden of proof. *ShaZor Logistics, LLC v. Amazon.com*, No. 24-CV-968-BJR, 2024 WL 4827533, at *3 (W.D. Wash. Nov. 19, 2024).

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

## IV. ARGUMENT

### A.      Valve Accepted Arbitral Jurisdiction

On October 25, 2021, on Valve's motion, *this Court* ruled that any challenges to the arbitration clause *must* be decided by the arbitrator consistent with the SSA's delegation clause. *See Wolfire*, 2021 WL 4952220, at *2. As the Court explained, "AAA rules give an arbitrator 'the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement.'" *Id.* (citing *Oracle Am., Inc. v. Myriad Group A.G.,* 724 F.3d 1069, 1074 n.1 (9th Cir. 2013)).

Consistent with that order, Valve submitted its arbitrability challenge to Arbitrator McSorley, who rejected it in a written ruling. Dkt. 3 at 43. Valve now offers no argument—let alone any authority—to contest that determination. Having invoked the delegation clause, litigated before the arbitrator, and lost on the very issue it asked her to decide, Valve is bound by the result. The Court's 2021 order requires it. The question of arbitrability has already been decided by the proper decision-maker. Under the FAA, that ends the matter: the Court must enforce the award and deny Valve's petition to vacate at the threshold.

### B.      Valve's 2025 Bad Faith Amendment

Valve's 2025 amendment was a bad faith update to the parties' existing arbitration agreement. While the parties were still litigating whether Mr. Birenbaum had assented to the 2024 amendment, the arbitration proceeded under the parties' prior agreement to arbitrate because the arbitrator correctly ruled that

RESPONDENT ALEC BIRENBAUM'S RESPONSE TO
PETITION TO VACATE ARBITRATION AWARD – Page 8

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

Valve's 2024 amendment did not divest her of jurisdiction. Valve then issued the 2025 amendment, the arbitrator issued the final award, and Valve dismissed its claims regarding Mr. Birenbaum's assent to the 2024 amendment.

Valve now seeks to gain an advantage by claiming that Mr. Birenbaum's alleged assent to the 2024 amendment necessarily carried over to the 2025 unilateral version. Valve provides no authority for this proposition, and this petition is not a declaratory judgment action as to the 2024 amendment. Instead, the 2025 amendment stands on its own as the allegedly controlling agreement when the arbitrator issued the award Valve now seeks to vacate. That unilateral update, aimed at reshaping the forum mid arbitration, breaches the covenant of good faith and fair dealing that governs every contract.

Courts have said as much. In *Cobb v. Ironwood Country Club*, 233 Cal. App. 4th 960 (2015), the defendant invoked a bylaw amendment clause to impose arbitration on claims already pending in court. Both the trial and appellate courts refused to allow it, holding that retroactively changing a forum clause exceeds the unilateral power to amend and breaches the implied covenant of good faith and fair dealing. *Id*. at 964, 969. The principle is straightforward: once a dispute begins, neither side may unilaterally manipulate contract terms to tilt the forum or the process. *Cobb* tried to add arbitration after litigation began; Valve tried to remove arbitration after arbitration began. The distinction is rhetorical, not legal. Each undermines the integrity of the original bargain.

RESPONDENT ALEC BIRENBAUM'S RESPONSE TO
PETITION TO VACATE ARBITRATION AWARD – Page 9

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

Washington law reaches the same conclusion. Every contract in this State carries an implied duty of good faith and fair dealing in performance and enforcement. *Badgett v. Sec. State Bank*, 116 Wn.2d 563, 569 (1991). That duty requires each party to preserve the other's benefit of the bargain—not to impose unilateral, material changes. *Betchard-Clayton, Inc. v. King*, 41 Wn. App. 887, 890 (1985), *review denied*, 104 Wn.2d 1027 (1985). And it forbids conduct that undermines the other side's reasonable expectations. *Metro. Park Dist. v. Griffith*, 106 Wn.2d 425, 437 (1986). Valve's 2025 amendment, issued while arbitration was pending, did all three and should be declared invalid and unenforceable.

In short, the arbitrator issued her award after Valve unilaterally issued the 2025 amendment—an amendment that purported to change the forum mid arbitration. That was and remains bad faith performance of the parties' prior, undisputed agreement to arbitrate. The forum was fixed by consent, the award lawfully rendered, and the arbitrator acted squarely within her authority. Valve's bad faith amendment does nothing to alter these facts. The Court should deny Valve's petition to vacate on this ground alone.

## C.    Valve's One-sided Amendment Does Not Affect the Award

To the extent the Court wants to turn this into a declaratory judgment action as to the now allegedly superseded 2024 amendment. These principles apply.

Jurisdiction, once vested in the arbitrator, cannot be unmade by regret. A party that compels arbitration, consents to its authority, and litigates it cannot later rewrite the forum clause to escape an adverse result. Valve's midstream amendment

RESPONDENT ALEC BIRENBAUM'S RESPONSE TO
PETITION TO VACATE ARBITRATION AWARD – Page 10

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

violates the implied duty of good faith and fair dealing, lacks the explicit consent its contract demands, and is both procedurally and substantively unconscionable. Equity and precedent align on the same rule: having chosen arbitration, participated fully, and lost, Valve cannot now revoke the jurisdiction of the arbitrator to whom it consented.

### 1.    Valve's Participation Bars This Subsequent Challenge

The Ninth Circuit has long made the point plainly: a party may not voluntarily submit to arbitration and then challenge the authority of the arbitrators to act. *Ficek v. S. Pac. Co.*, 338 F.2d 655, 657 (9th Cir. 1964). In *Fortune, Alsweet & Eldridge v. Daniel*, 724 F.2d 1355, 1357 (9th Cir. 1983), the court likewise held that it would be "unreasonable and unjust to allow [a party] to challenge the legitimacy of the arbitration process, in which [it] had voluntarily participated over a period of several months, shortly before the arbitrator announced her decision." This long precluded tactic is exactly what Valve attempts here. Were it permissible, Valve would be allowed to confirm the awards it favors and vacate those it disfavors—a "heads I win, tails you lose" gambit the Ninth Circuit has squarely rejected. *Martin v. Yasuda*, 829 F.3d 1118, 1125 (9th Cir. 2016). The Court should therefore reject Valve's petition outright as the very form of gamesmanship the FAA does not tolerate.

### 2.    Valve's Contract Update Does Not Oust Arbitral Jurisdiction

The SSA permits amendment in only two ways—by mutual agreement or by unilateral modification by Valve. Dkt. 2 at 17, § 8. Neither path leads where Valve

RESPONDENT ALEC BIRENBAUM'S RESPONSE TO
PETITION TO VACATE ARBITRATION AWARD – Page 11

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

hopes to go. Courts have repeatedly held that unilateral attempts to change the forum constitute bad-faith conduct. *See, e.g., Cobb*, 233 Cal. App. 4th 960 (holding that retroactive application of an arbitration clause to claims filed in court violated the implied covenant of good faith and fair dealing). Valve also constrained itself by requiring that any mutual amendment rest on "explicit consent"—a term courts interpret to mean consent free of ambiguity. *In re Facebook, Inc., Consumer Privacy User Profile Litigation*, 402 F. Supp. 3d 767, 794 (N.D. Cal. 2019).

### a.    A Unilateral Update to End Arbitration Breaches the Covenant of Good Faith and Fair Dealing

Any argument that Valve successfully amended the contract unilaterally fails under settled law. *See Cobb*, 233 Cal. App. 4th at 964, 969; *Badgett*, 116 Wn.2d at 569; *King*, 41 Wn. App. at 890; *Griffith*, 106 Wn.2d at 437. Valve's basis for enforcing the 2025 amendment is unclear, but to the extent it rests on a unilateral change, the amendment is invalid and unenforceable. The same holds true for the 2024 amendment. Any attempt to impose that version unilaterally violates the covenant of good faith and fair dealing and cannot stand.

### b.    Explicit Consent Means Unequivocal Amendments

The SSA permits amendment only "by [Mr. Birenbaum's] explicit consent to changes proposed by Valve." Dkt. 2-1, § 8.A. Although undefined, the term "explicit consent" has a precise legal meaning: consent that is express, clear, and unmistakable. *See EXPLICIT*, Black's Law Dictionary (12th ed. 2024) ("Expressed without ambiguity or vagueness; leaving no doubt."); *EXPRESS CONSENT*, Black's Law Dictionary (12th ed. 2024) ("Consent that is clearly and unmistakably stated.").

RESPONDENT ALEC BIRENBAUM'S RESPONSE TO
PETITION TO VACATE ARBITRATION AWARD – Page 12

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

"Explicit consent" means more than a click-through agreement pushed to millions of users containing vague and ambiguous terms, as Valve did here.

Courts in this circuit agree that such language requires more. They have interpreted "explicit consent" with rigor. In *Rosenow v. Facebook, Inc.*, No. 19-CV-1297-WQH-MMP, 2025 WL 951277 (S.D. Cal. Mar. 28, 2025), and *In re Facebook*, 402 F. Supp. 3d at 794, the courts held that actual consent—explicit or implied—requires clear notice and sufficient detail to inform the user exactly what they are agreeing to. In other words, the terms must be "clear and unequivocal." *Rosenow*, 2025 WL 951277, at *14.

Against this backdrop, Valve offers no evidence that Mr. Birenbaum explicitly agreed to its new terms or that he understood them to extinguish an arbitration already underway. To the contrary, the record clearly establishes the opposite: Mr. Birenbaum continued using his Steam account and prosecuting his arbitration claims, even providing testimony at the arbitration hearing. At most, Valve's argument based solely on the existence of the updated SSA itself, which it pushed to millions of users with general language, falls short of the explicit consent its own contract demands.

The lack of explicit consent is stark against the backdrop of Valve's unethical choice to even make this offer to Mr. Birenbaum directly, rather than through counsel. When a party is known to be represented in a proceeding, communications go through counsel. Yet Valve purports to have tendered to Mr. Birenbaum directly a click-wrap form that upended his currently pending arbitration that resulted in a

RESPONDENT ALEC BIRENBAUM'S RESPONSE TO
PETITION TO VACATE ARBITRATION AWARD – Page 13

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

substantial award in his favor. Not only was Valve's "consent' not explicit, it was certainly not explicit in the context of a litigation where decisions and offers are expected by a client to go through counsel. Mr. Birenbaum had no reason to think his rights in arbitration were going to be affected by the notice presented to him, because he had the expectation all clients have that settlement and other legal offers will be conveyed through counsel.

A party that drafts a high bar for amendment must live by it—and propose clear and unequivocal language stating that acceptance of the amendment means withdrawing specific arbitration claims at issue. *Rosenow*, 2025 WL 951277, at *14. Valve's failure to secure that consent means the 2024 amendment, by the very terms of its own contract, is ineffective and cannot disturb the arbitrator's jurisdiction or the final award.

### 3.    Unconscionable in Formation and in Substance, the Update Is Void or Severable

Even if the Court were to find that Mr. Birenbaum somehow gave explicit consent to Valve's purported amendment, the new agreement cannot be enforced because it is both procedurally and substantively unconscionable. Washington recognizes two types of unconscionability for invalidating forum selection clauses: procedural and substantive. *McKee v. AT&T Corp.*, 164 Wn.2d 372, 396, 191 P.3d 845 (2008). Procedural unconscionability applies to impropriety during contract formation, while substantive unconscionability applies where a term is one-sided or overly harsh. *Nelson v. McGoldrick*, 127 Wn.2d 124, 131, 896 P.2d 1258 (1995).

RESPONDENT ALEC BIRENBAUM'S RESPONSE TO
PETITION TO VACATE ARBITRATION AWARD – Page 14

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

Either is sufficient to void an agreement. *Hill v. Garda CL Nw., Inc.*, 179 Wn.2d 47, 55, 308 P.3d 635 (2013). Both forms are present here.

### a.   Valve's "Cancel-or-Lose-Everything" Tactics Show Procedural Unconscionability

Washington courts determine procedural unconscionability by examining the circumstances of formation—how the agreement was entered, whether the weaker party had a reasonable opportunity to understand its terms, and whether important terms were hidden in fine print or otherwise obscured. *Burnett v. Pagliacci Pizza, Inc.*, 196 Wn.2d 38, 54–55 (2020) (citing *Nelson*, 127 Wn.2d at 131; *Zuver v. Airtouch Commc'ns, Inc.*, 153 Wn.2d 293, 304 (2004)). A contract is procedurally unconscionable when a party with unequal bargaining power lacks a meaningful opportunity to review or negotiate the terms, rendering the result an adhesion contract. *Adler v. Fred Lind Manor*, 153 Wn.2d 331, 348 (2004).

Here, Mr. Birenbaum—like the employee in *Burnett*—had no real choice or chance to review the terms before being bound. Valve's update was a non-negotiable clickwrap that demanded assent simply to keep using content he had already bought. Worse, Valve concealed its true intent: that Mr. Birenbaum must abandon his ongoing arbitration of antitrust claims. Only weeks later, when Valve moved to dismiss the arbitration, did that intent become clear. By then, Mr. Birenbaum had been forced into supposed acceptance of general terms covering millions of others. Had Valve genuinely wished to resolve matters ethically, it would have contacted Mr. Birenbaum's counsel under the rules of professional conduct—not delivered a stealth withdrawal through the Steam platform. *See, e.g., Grant v. T-Mobile USA,*

RESPONDENT ALEC BIRENBAUM'S RESPONSE TO
PETITION TO VACATE ARBITRATION AWARD – Page 15

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

*Inc.*, No. 2:23-CV-01946-MJP, 2024 WL 3510937, at *6 (W.D. Wash. July 23, 2024) ("the Court disapproves of T-Mobile directly asking Grant to retroactively waive her right to trial in a case that had already been filed, rather than making the request through her counsel. This is a poor (if not unethical) practice and should not continue."). Valve provided Mr. Birenbaum no meaningful choice; it was a manufactured illusion of choice.

More importantly, this case exemplifies a bait-and-switch carried out under overwhelming bargaining power. Valve, a proven monopolist, unilaterally changed the governing contract after compelling arbitration, hiding its new objective behind ambiguous language applied to millions of users. Such conduct embodies both oppression and surprise—the hallmarks of procedural unconscionability. *Burnett*, 196 Wn.2d at 54–55. Valve wielded its dominance to rewrite the rules in its own favor, leaving Mr. Birenbaum with no meaningful opportunity to bargain or refuse. Even if he somehow agreed to the update, that assent was extracted under conditions so one-sided and coercive that the contract is procedurally unconscionable and unenforceable.

**b.    When One Side Can Rewrite the Deal, It Stops Being a Deal**

Washington law bars clauses that crush one side and favor the drafter. Substantive unconscionability tests the substance of a term—whether it is so one-sided or oppressive that equity cannot enforce it. *Burnett.*, 196 Wn.2d at 55; *Gandee v. LDL Freedom Enters.*, 176 Wn.2d 598, 603 (2013); *Tadych v. Noble Ridge Constr., Inc.*, 200 Wn.2d 635, 645–46, 519 P.3d 199 (2022); *Adler*, 153 Wn.2d at 344.

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

It exists when a provision is so one-sided, harsh, or "monstrously calloused" that it shocks the conscience and confers unjustified advantage on the stronger party. *Adler*, 153 Wn.2d at 344–45; *Nelson*, 127 Wn.2d at 131. In *Burnett*, the Washington Supreme Court condemned an arbitration policy that forced employees through a multi-step internal procedure controlled entirely by the employer, calling it "so one-sided and harsh that it is substantively unconscionable." *Burnett*, 196 Wn.2d at 55 (quoting *Zuver*, 153 Wn.2d at 318). The doctrine guards against contractual schemes that, by design, let one party win by self-interested rules instead of merit.

Valve's 2025 and 2024 amendments fit this mold. They were imposed unilaterally, after litigation had begun, on a take-it-or-lose-everything basis. The new forum-selection clause demands that Mr. Birenbaum discard months of victorious effort, hundreds of thousands of dollars in awarded costs and fees, and refile his claims in federal court where he would have to roll the dice and hope to win his case again. The amendments offer him nothing in return. The benefit runs one way—exclusively to Valve. That imbalance is not accident but design, the same kind of self-serving mechanism *Burnett* condemned: a two-step process that guarantees the drafter the upper hand. Mr. Birenbaum had no voice, no real choice, and no way to keep what he had paid for without surrendering his right to arbitration. Washington courts have a name for that kind of maneuver—substantive unconscionability.

Washington courts have long condemned such tactics, where the stronger party rigs the process to run out the clock. *See Tadych*, 200 Wn.2d at 641; *Gandee*,

RESPONDENT ALEC BIRENBAUM'S RESPONSE TO
PETITION TO VACATE ARBITRATION AWARD – Page 17

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

176 Wn.2d at 603; *Adler*, 153 Wn.2d at 344. In substance, Valve changed the rules mid-game to make sure only it could win. This act violates the protection of substantive unconscionability

### 4.    Equity Precludes Valve's Attempt to Escape Arbitration

Valve seeks to undo the very arbitration it compelled, consented to, and contested. Equity forbids a second bite born of regret. Waiver, equitable estoppel, and judicial estoppel all say the same thing: a party cannot handpick its forum, enjoy its efficiency and informality, and then disown it once unfavorable decisions start coming in. The law locks Valve into the results of the forum it selected.

#### a.    Valve Chose the Forum, and Now Objects to It: Waiver Ensures the Law Doesn't Work That Way

When consumers brought antitrust claims in federal court, Valve intentionally chose the arbitral forum. It requested that every issue, including arbitrability, be decided there—and consented to the arbitrator's jurisdiction over Mr. Birenbaum's claims. *Wolfire*, 2021 WL 4952220. It cannot now reverse course and ask this Court to vacate the very award it sought in that forum.

In *Morgan v. Sundance, Inc.*, 596 U.S. 411, 417 (2022), the Supreme Court rejected arbitration-specific rules requiring prejudice to find waiver. Waiver follows ordinary contract principles, not arbitration policy. Absent prejudice, waiver turns on two elements: knowledge of the right and inconsistent conduct. *Martin*, 829 F.3d at 1124. Valve satisfies both. There is no dispute Valve knew its rights—it could have defended all antitrust claims in federal court in 2021 or objected to the

RESPONDENT ALEC BIRENBAUM'S RESPONSE TO
PETITION TO VACATE ARBITRATION AWARD – Page 18

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

arbitrator's jurisdiction by the arbitral deadline. It did neither. Instead, it compelled arbitration, participated fully, and now seeks to vacate the arbitrator's award.

That course of conduct is textbook waiver—knowledge of a right followed by deliberate inconsistency. Having fully invoked and benefitted from the efficiency and informality of the arbitral process, Valve cannot now claim that the forum it chose lacked authority to decide Mr. Birenbaum's claims. *Morgan* and *Martin* foreclose that maneuver. Accordingly, the Court should conclude that Valve waived any right to challenge the arbitrator's jurisdiction to issue the final award.

### b. Equitable Estoppel Prevents Valve from Renouncing the Arbitration It Demanded

Equitable estoppel prevents a party from inducing reliance on one position only to abandon it when the outcome turns unfavorable. *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042 (9th Cir. 2009). The Ninth Circuit applies state-law estoppel principles in arbitration cases. *See Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1128 (9th Cir. 2013) (citing *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624 (2009)); *accord Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1229 (9th Cir. 2013). Washington law follows the same rule: a party that adopts a position, induces reliance, and later reverses course to the other's detriment is estopped. *Saunders v. Lloyd's of London*, 113 Wn.2d 330, 336, 779 P.2d 249 (1989). Valve meets every element.

Valve first took the position that arbitration was the proper forum. It moved to compel arbitration of the antitrust claims, invoking the same forum-selection clause that Mr. Birenbaum followed in filing his dispute. It told the Court—and the arbitrator—that all issues, including arbitrability, belonged before the arbitrator.

RESPONDENT ALEC BIRENBAUM'S RESPONSE TO
PETITION TO VACATE ARBITRATION AWARD – Page 19

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

Mr. Birenbaum relied on that position. He pursued arbitration under the SSA valve compelled arbitration under, paid his filing fees, incurred $81,444.91 in costs and hundreds of thousands in attorneys' fees, and litigated through to final award in his favor. Valve likewise participated fully—filing briefs, attending hearings, and consenting to the arbitrator's jurisdiction. That Mr. Birenbaum's reliance was not only foreseeable; it was the direct result of Valve's own actions.

Now Valve reverses course. It claims that the amended versions of its agreement—issued while arbitration was ongoing—retroactively stripped the arbitrator of authority. That maneuver would erase the process Valve demanded and nullify the result it lost. Washington law does not tolerate such gamesmanship. *Saunders*, 113 Wn.2d at 336.

Equitable estoppel bars precisely this kind of bait-and-switch. Having led Mr. Birenbaum into arbitration and consented to litigate there, Valve cannot now disclaim the forum it selected merely because the result displeases it. The doctrine holds fast: equitable estoppel locks Valve to the position it embraced and prevents it from vacating the award issued through the very process it compelled.

### c.    Judicial Estoppel Precludes Valve from Reversing Its Prior Litigation Position

Judicial estoppel is the law's way of saying enough is enough. It prevents a party from shifting positions to suit the moment—a principle the Supreme Court described as essential to protecting the integrity of the judicial process. *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001) (judicial estoppel "prohibit[s] parties from deliberately changing positions according to the exigencies of the moment").

RESPONDENT ALEC BIRENBAUM'S RESPONSE TO
PETITION TO VACATE ARBITRATION AWARD – Page 20

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

The doctrine is rooted in equity and applies with particular force when a litigant seeks to profit from inconsistent representations made to different tribunals. *Id.* Washington law is no different: a party cannot treat a contract as a nullity in one case and enforce it in another. *Hardgrove v. Bowman*, 10 Wn.2d 136, 138, 116 P.2d 336, 337 (1941).

"A court may properly apply judicial estoppel when the following elements are shown: (1) a party asserts a position that is 'clearly inconsistent' with an earlier position; (2) judicial acceptance of the inconsistent position would indicate that either the first or second court was misled; and (3) 'the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party.'" *Baldwin v. Silver*, 147 Wn. App. 531, 535, 196 P.3d 170, 172 (2008) (citing *Arkison v. Ethan Allen, Inc.,* 160 Wn.2d 535, 538–39, 160 P.3d 13 (2007)). All three elements are met here.

Valve has repeatedly taken the position both that the pre-2024 SSA was enforceable and that issues of arbitrability are to be decided by the arbitrator. Valve took that position before this court. *Wolfire*, 2021 WL 4952220. Valve took that position in front of the arbitrators. Valve took that position in front of Washington state courts in confirming the awards of individuals who abirritations were awarded *after* the 2024 amendment. *Valve v. Abruzze*, 24-1717-JNW, Dkts. 54, 75, 98.

If Valve is correct that its unilateral term change means awards under the pre-2024 and 2025 agreements must be vacated, then Valve necessarily mislead the Washington state court when it claimed post-2024 term change awards should be

RESPONDENT ALEC BIRENBAUM'S RESPONSE TO
PETITION TO VACATE ARBITRATION AWARD – Page 21

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

confirmed. If Valve is correct that the issues of arbitrability actually need to be decided by this court, then it misled this court when it argued "whether this dispute falls within the scope of the SSA's arbitration agreement (the second requirement) is a question of arbitrability delegated to the arbitrator." *Wolfire*, Dkt. 35. If Valve is correct that the pre-2024 doesn't govern, then it mislead Arbitrator McSorley when it initially agreed to her jurisdiction to resolve the parties' dispute.

The unfair detriment on Mr. Birenbaum is enormous. Valve suggests he must forfeit a more than $700,000 award because he litigated his claims, and Valve's belated assertion that his claim was not arbitrable, in the forum Valve has repeatedly told tribunals those disputes must be litigated in. Valve's two-faced gambit is precisely the conduct judicial prevents.

Valve's litigation tactics are a case study in gamesmanship. Across years of litigation—from *Wolfire* to *Beer v. Valve*, and hundreds of consumer arbitrations— Valve insisted that the SSA required individual arbitration and deprived courts of any power to interfere on any issue. It compelled arbitration, resisted judicial oversight, and has even confirmed arbitral awards issued under that same agreement following its purported amendment. Having secured the benefits of that position, Valve now tells the opposite story. It claims the same arbitration clause is suddenly unenforceable and that its 2024 update authorizes the Court to vacate the very arbitrations it once demanded.

Judicial estoppel exists to prevent exactly this sort of misconduct. Having convinced courts and arbitrators that disputes under the SSA must proceed in

RESPONDENT ALEC BIRENBAUM'S RESPONSE TO
PETITION TO VACATE ARBITRATION AWARD – Page 22

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

arbitration, and must be confirmed once awarded, Valve cannot now invoke its 2024 or 2025 amendment to undo the ultimate result. Valve must be held to the word it gave this Court and others, or its litigation tactics will run amok. Enough is enough.

After years of insisting that arbitration was the exclusive forum under its own user agreement, including multiple times in Mr. Birenbaum's own arbitration, Valve must now stand by that position. The Court must hold Valve to its word Judicial estoppel bars vacatur.

### 5.    Valve Relies on Straw Men, Not Binding Precedent

Valve leans on case law from across the country, but none of it fits these facts. Its lead citation—*Coinbase, Inc. v. Suski*—addressed a threshold question about which forum clause governs when two contracts conflict. The rest involve good-faith updates made before arbitration began or mutual assent reached at the outset of litigation. Not one decision supports what Valve attempts here: using a self-serving contract update to revoke the jurisdiction of an arbitrator it consented to and defended before.

### a.    *Coinbase* Has Nothing to Do with This Petition

Valve leans heavily on *Coinbase, Inc. v. Suski*, 602 U.S. 143 (2024), but that decision addressed a different question—the "first question in any arbitration dispute," as the Court put it. *Id.* at 148. Valve's petition, by contrast, presents the opposite inquiry: the last question in any arbitration dispute—whether the award should be confirmed.

RESPONDENT ALEC BIRENBAUM'S RESPONSE TO
PETITION TO VACATE ARBITRATION AWARD – Page 23

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

In *Coinbase*, the parties executed two separate contracts—one requiring arbitration of all disputes (including arbitrability) and another designating California courts as the forum. The Supreme Court held that when multiple facially valid agreements contain competing dispute-resolution clauses, a court must first decide which contract controls before enforcing either clause. *Id.* at 149–52. That narrow holding has no bearing here. The SSA is the only contract at issue, and it delegates all questions of arbitrability to the arbitrator. There is no competing agreement to choose between.

Valve agreed to arbitrate under that one agreement. It consented to the jurisdiction of Arbitrator McSorley—who presided over the case—and proceeded to defend itself in that forum for years. And Valve *compelled* arbitration under that agreement. Having invoked arbitration, participated fully, and lost, Valve now tries to recast *Coinbase* as a lifeline. But *Coinbase* has no application to these facts, and Valve has never provided a valid argument to the contrary. It plucks one line from *Coinbase* regarding whether parties agreed to arbitrate and acts as though that isolated phrase requires this Court to ignore every other principle of law to the contrary. That is not how the law works.

The Eighth Circuit's decision in *Lackie Drug Store, Inc. v. OptumRx, Inc.*, 143 F.4th 985, 998–99 (8th Cir. 2025), confirms the point. There, the court rejected an identical attempt to stretch *Coinbase* beyond its facts, explaining that *Coinbase* applies only when "parties have executed two contracts" with conflicting arbitration

RESPONDENT ALEC BIRENBAUM'S RESPONSE TO
PETITION TO VACATE ARBITRATION AWARD – Page 24

provisions. *Id*. Where, as here, there is just one contract containing a valid delegation clause, courts must send all issues to arbitration. *See Wolfire*.

Arbitrator McSorley recognized as much. In the arbitration, she rejected Valve's reliance on *Coinbase* as misplaced. Dkt. Dkt. 3 at 43. Valve's current position is simply a repackaged version of the same argument she already denied and functions as an impermissible direct appeal from that ruling. That is exactly what the Ninth Circuit forbids: "a party may not submit a claim to arbitration and then challenge the authority of the arbitrator to act after receiving an unfavorable result." *Fortune*, 724 F.2d at 1357 (citing *Ficek*, 338 F.2d at 655).

Even if *Coinbase* were read to require a court to decide whether to compel arbitration in this situation, that is what this court did. *Wolfire*, 2021 WL 4952220. Valve's argument is not only that *Coinbase* means this court must decide whether arbitration is appropriate, but that it must *decide again*. That Valve attempted to change its agreement to reverse its prior success does not entitle it to re-review of the legal question of delegation. To read *Coinbase* to mandate repeated court review following a successful motion to compel would invite *ad nauseum* litigation and deprive an order compelling arbitration any semblance of finality.

In short, *Coinbase* concerned two contracts competing for control. This case involves one contract Valve drafted, invoked, consented to, and lost under. The law does not allow Valve to transform *Coinbase* into an escape hatch from its own contract.

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

### b.  Valve's Out-of-Forum Cases Don't Bind and Don't Persuade

Valve leans on federal cases from across the country—not Washington—to argue that Mr. Birenbaum's award should be vacated based on its bad-faith update. Dkt. 1 ¶ 8; *id.* at 6 n.4. But those authorities highlight why Valve's position fails.

Start with *Bozek v. PNC Bank*, 2020 WL 6581491 (E.D. Pa. Nov. 10, 2020), *aff'd* 2021 WL 4240359 (3d Cir. Sept. 17, 2021). Valve quotes *Bozek* for the proposition that "an arbitrator exceeds her powers by issuing an award when the parties have no agreement to arbitrate." Dkt. 1 ¶ 8. But *Bozek* involved nothing like this case. It arose from a supposed arbitration launched in secret, before a panel of the claimant's acquaintances, under a one-sided contract of adhesion the other party never saw—and accompanied, as the court put it, by "pages of unintelligible legal jargon." *Id.* at 1, 3–5. The court rightly vacated that sham proceeding.

*Bozek* thus stands for the unremarkable principle that no one can be bound by an arbitration they neither agreed to nor participated in. Valve, by contrast, drafted the agreement, invoked it, and compelled arbitration. There was nothing clandestine about these proceedings—only an unfavorable result Valve now seeks to erase through similar obscure and unclear legal jargon.

*Dasher v. RBC Bank (USA)*, 745 F.3d 1111 (11th Cir. 2014), fares no better. Applying North Carolina law, the Eleventh Circuit held that when parties clearly express their intent to supersede a prior contract, the prior arbitration clause is displaced. *Id.* at 1123. Washington has no comparable rule. Timing also distinguishes *Dasher*: by the time the bank moved to compel arbitration, the prior

RESPONDENT ALEC BIRENBAUM'S RESPONSE TO
PETITION TO VACATE ARBITRATION AWARD – Page 26

agreement had already been terminated. *Id.* at 1126–27. Here, arbitration was compelled while Valve's clause remained in full force. Valve invoked that clause— and must live with it. Dasher offers no refuge.

*Pilon v. Discovery Commcn's, LLC* proves the same point. 769 F. Supp. 3d 273, 286 (S.D.N.Y. 2025). There, the court applied different state laws to two contracts—California law to the first, New York law to the second—and compelled arbitration under whichever contract each party accepted. *Id.* at 286–90, 294– 98. Pilon turned on choice of law and mutual assent, not on any effort to enjoin an ongoing arbitration or divert it into court. It bears no resemblance to this case.

Valve next cites *Laster v. T-Mobile USA, Inc.*, No. 05CV1167DMS AJB, 2008 WL 5216255 (S.D. Cal. Aug. 11, 2008), *aff'd sub nom. Laster v. AT & T Mobility LLC*, 584 F.3d 849 (9th Cir. 2009), *rev'd sub nom. AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011), *and amended in part*, No. 05CV1167 DMS WVG, 2012 WL 1681762 (S.D. Cal. May 9, 2012). Whatever vitality *Laster* once had vanished after *Concepcion*. In any event, *Laster* involved a good-faith update issued before arbitration began—not, as here, a bad-faith maneuver to oust an arbitrator's jurisdiction midstream.

*Enderlin v. XM Satellite Radio Holdings, Inc.,* No. 4:06-CV-0032 GTE, 2008 WL 830262 (E.D. Ark. Mar. 25, 2008), stands for the same narrow point: a party is

RESPONDENT ALEC BIRENBAUM'S RESPONSE TO
PETITION TO VACATE ARBITRATION AWARD – Page 27

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

bound to a good-faith update to an existing arbitration agreement. Valve's bad faith takes it outside even that limited rule. [2]

Finally, *McCumbee v. M Pizza, Inc.*, 2023 WL 2725991, (N.D. W. Va. Mar. 30, 2023), involved mutual assent reached within weeks of initiating litigation. There, most employees had already signed arbitration agreements; when the company discovered a few had not, it promptly obtained their consent, including plaintiff. *Id.* at 4–5, 14. *McCumbee* thus dealt with mutual assent achieved at the outset—not an eleventh-hour attempt to vacate an award after losing in arbitration it compelled.

All these cases share the same fatal flaws. They arose under different law, turned on mutual assent in the absence of bad faith, and never contemplated the kind of midstream reversal or post-loss vacatur Valve seeks here. None endorses revoking an arbitration clause after compelling its enforcement—or undoing a final award from the very forum Valve chose. Law and fairness alike lock Valve into the consequences of its own bargain.

---

[2] Valve's reliance on *Goetsch v. Shell Oil Co.*, 197 F.R.D. 574, 577 (W.D.N.C. 2000) fails for the same reason that the agreement was amended by a good faith update to alter the rules of the arbitration.

RESPONDENT ALEC BIRENBAUM'S RESPONSE TO
PETITION TO VACATE ARBITRATION AWARD – Page 28

**D.      Valve Wasn't Denied Due Process—Nor In Arbitration Is Valve Entitled to It**

Valve next invokes Section 10(a)(3) of the FAA, which permits vacatur where an arbitrator "refuse[s] to hear evidence pertinent and material to the controversy" or otherwise engages in "misbehavior by which the rights of any party have been prejudiced." 9 U.S.C. § 10(a)(3). These grounds are extremely narrow because "[a]rbitration is not a perfect system of justice, nor it is designed to be." *Hoffman v. Cargill, Inc.*, 236 F.3d 458, 462 (8th Cir. 2001) (citing *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 30–32 (1991)). "In the arbitration setting we have almost none of the protections that fundamental fairness and due process usually require." *Id.* at 462–63 (cleaned up).

Here, there is no allegation that the arbitrator refused to hear evidence or argument contesting an award of fees. Instead, Valve complains that it was denied an opportunity to review and object to Mr. Birenbaum's submissions in support of his request for fees. Dkt. 1 ¶¶ 22–34.

That argument fails at every level. Arbitrator McSorley's procedure—simultaneous briefing on fees—is expressly permitted under the AAA Consumer Arbitration Rules and consistent with federal standards of fairness. The Ninth Circuit has "repeatedly held that arbitration is not governed by the federal courts' strict procedural and evidentiary requirements," and courts must be "mindful not to impose" those requirements on arbitration proceedings. *Astronics Elec. Sys. Corp. v. MAGicALL, Inc.*, No. 22-35645, 2023 WL 3451682, at *1 (9th Cir. May 15, 2023) (quoting *U.S. Life Ins. Co. v. Superior Nat'l Ins. Co.*, 591 F.3d 1167, 1173 (9th Cir.

RESPONDENT ALEC BIRENBAUM'S RESPONSE TO
PETITION TO VACATE ARBITRATION AWARD – Page 29

2010)). Even if Valve would have preferred something other than simultaneous briefing on fees, a fair hearing need not be a perfect one. And nothing in the record suggests that Valve was deprived of a fair procedure.

The cases Valve invokes do not say otherwise. In *Move, Inc. v. Citigroup Global Markets, Inc.*, 840 F.3d 1152 (9th Cir. 2016), the issue was whether an award should be vacated after it was revealed that the tribunal's chairperson was a conman impersonating a retired lawyer. Its mention of ex parte evidence is dicta, drawn from *Totem Marine Tug & Barge, Inc. v. N. Am. Towing, Inc.*, 607 F.2d 649 (5th Cir. 1979), a 50-year-old case involving a gross due-process violation. There, an arbitrator telephoned one party's counsel to obtain a damages figure and used that figure in the award—without notice to or input from the opposing side. *Id.* at 650. That conduct bears no resemblance to what happened here.

As Arbitrator McSorley found, Valve's failure to brief the fee issue was entirely of its own making. The arbitrator's August 9 Order expressly directed both sides to address "all issues including entitlement to attorneys' fees" and required any party seeking fees to submit detailed affidavits of services, billing rates, and time entries by September 5, 2025. Dkt. 3 at 64–65. Valve neither objected to that procedure nor asked for an opportunity to respond.

Instead, weeks later, Valve used its post-hearing brief to complain that it could not yet "test" the reasonableness of fees—an objection the arbitrator rightly rejected as untimely. *Id.* She concluded that "Respondent could have timely raised these objections after the Arbitrator advised the parties … that it was her intention

RESPONDENT ALEC BIRENBAUM'S RESPONSE TO
PETITION TO VACATE ARBITRATION AWARD – Page 30

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

to address all issues at one time" and that "having made the strategic decision not to raise the issues … the Respondent cannot now be heard to object." *Id.*

That ruling forecloses Valve's claim under § 10(a)(3). A party that deliberately declines to follow the arbitrator's instructions cannot later cry procedural unfairness. The record shows notice, opportunity, and a clear waiver by inaction. Arbitration does not require perfection—only a fair process, which Valve received. Having ignored the order it now attacks, Valve has no right to vacate the award merely because it dislikes the outcome of a procedure it chose not to contest.

At most, Valve cites a case for the unremarkable proposition that a fee applicant must provide documentation supporting its request. Dkt. 1 ¶ 29 (citing *QC Mfg., Inc. v. Solatube Int'l, Inc.*, No. SACV 20-02208-CJC(JDEX), 2022 WL 22879571 (C.D. Cal. Jan. 18, 2022)). There, the court noted that it "need not perform a line-by-line analysis of [the attorneys'] timesheets and can instead opine more generally on the reasonableness of the amount of work [the attorneys] performed after reviewing [the attorneys'] timesheets." 2022 WL 22879571 at *8. That is precisely what Arbitrator McSorley did here. Valve identifies no procedural irregularity—let alone one that rendered the hearing fundamentally unfair under § 10(a)(3).

To the extent the Court considers Valve's remaining authorities, they underscore the frivolousness of its position. Valve unnecessarily—without explanation—cites cases involving fee awards in class actions, domestic-relations disputes, and child-support proceedings. *See, e.g., In re Classmates.com Consol.*

RESPONDENT ALEC BIRENBAUM'S RESPONSE TO
PETITION TO VACATE ARBITRATION AWARD – Page 31

*Litig.*, No. C09-45RAJ, 2012 WL 3854501, at *2 (W.D. Wash. June 15, 2012) (class members have a right to review class counsel's fee requests); *Lawler v. Johnson*, 253 So. 3d 939, 952 (Ala. 2017) (same); *In re Marriage of Tognoni*, 313 P.3d 655, 661 (Colo. App. 2011) (unpaid child support); *Trethewey v. Trethewey*, 104 Mass. App. Ct. 114, 121 (Mass. App. 2024) (acrimonious divorce). None involved arbitration, let alone the AAA's fee procedures or the FAA's vacatur standard. Their inclusion underscores the weakness of Valve's position and its intent to increase the burden of litigation through frivolous and irrelevant arguments.

In sum, Valve's due-process claim is meritless. The record shows it received notice, had a full opportunity to be heard, and litigated every issue before a neutral decisionmaker. The FAA does not entitle a party to a do-over simply because it dislikes the outcome. Valve's petition to vacate should be denied.

**E.    The Award Was Rational, Not Arbitrary**

Valve claims the arbitrator's award was irrational and arbitrary, warranting vacatur under § 10(a)(4) of the FAA. The Ninth Circuit has made clear that § 10(a)(4) sets a high bar—it is not enough to show that the arbitrator erred, or even seriously erred. *Lagstein v. Certain Underwriters at Lloyd's, London*, 607 F.3d 634, 641 (9th Cir. 2010) (citing *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671 (2010)). Vacatur is proper only if the award is "completely irrational" or shows a "manifest disregard for the law." *ShaZor Logistics,* 2024 WL 4827533, at *3 (quoting *Kyocera Corp. v. Prudential-Bache Trade Servs., Inc.*, 341 F.3d 987, 997–98 (9th Cir. 2003)).

RESPONDENT ALEC BIRENBAUM'S RESPONSE TO
PETITION TO VACATE ARBITRATION AWARD – Page 32

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

Valve has not come close to meeting that standard; the award is reasoned, cites controlling law, and rests on ample evidence.

Valve's only arguably relevant citation is *Briscoe Protective, LLC v. N. Fork Surgery Ctr., LLC*, 215 A.D.3d 956, 957–58, 188 N.Y.S.3d 113 (2023). There, a New York appellate court vacated an award after finding that the arbitrator granted attorneys' fees without any proof of hours worked or hourly rates—awarding fifty percent of the damages as fees with no record support. *Id.* That decision turned on the absence of any evidence whatsoever, not a misapplication of law or failure to allow objections to such evidence. Here, by contrast, Mr. Birenbaum submitted affidavit support and entry-by-entry billing records, and Arbitrator McSorley reviewed them before issuing a reasoned decision.

*Briscoe Protective* also applied New York's domestic arbitration statute, N.Y. C.P.L.R. Art. 75, not the FAA. Under the FAA, the Ninth Circuit has emphasized that "neither erroneous legal conclusions nor unsubstantiated factual findings justify federal court review of an arbitral award." *Ghayoori v. Cobra Trading, Inc.*, No. C25-0021 TSZ, 2025 WL 1519136, at *3 (W.D. Wash. May 28, 2025) (quoting *Kyocera*, 341 F.3d at 994). So even if *Briscoe Protective* were on point, it would not justify vacatur here.

At most, Valve's objections reduce to claims of legal error—which cannot sustain vacatur under § 10(a)(4). The Ninth Circuit requires far more: "the moving party must show that the arbitrator understood and correctly stated the law, but proceeded to disregard the same." *Bosack v. Soward*, 586 F.3d 1096, 1104 (9th Cir.

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

2009) (cleaned up). Valve makes no such showing. The record reveals a careful and reasoned decision, not a disregard for law or logic.

In sum, the award was reasoned, supported, and lawful. Nothing about it was arbitrary, much less capricious.

## V. CONCLUSION

For the above reasons, Mr. Birenbaum respectfully requests that the Court deny Valve's petition to vacate his award.

DATED this 5th day of November, 2025.

BAILEY DUQUETTE P.C.

By: */s William R. Burnside*
William R. Burnside, WSBA #36002
800 Fifth Ave, Suite 101-800
Seattle, Washington 98104
T: 206.353.8021
E: will@baileyduquette.com

BUCHER LAW PLLC

William Ward Bucher IV
(*pro hac vice* forthcoming)
350 Northern Blvd, STE 324-1519
Albany, NY 12204-1000
Tel. 202.997.3029
E: will@bucherlaw.com

*Attorneys for Respondent*

RESPONDENT ALEC BIRENBAUM'S RESPONSE TO
PETITION TO VACATE ARBITRATION AWARD – Page 34

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869

**CERTIFICATE OF SERVICE**

I hereby certify that on this date, I caused a true and correct copy of the foregoing Respondent Alec Birenbaum's Response to Petition to Vacate Arbitration Award served upon counsel of record herein, as follows:

Blake Marks-Dias, WSBA No. 28169
1015 Second Avenue, Floor 10                    ☒ Via Electronic Service
Seattle, Washington 98104
(206) 625-8600 Phone
(206) 625-0900 Fax
E: bmarksdias@corrcronin.com

Michael W. McTigue Jr., *Admitted Pro Hac Vice*
Meredith C. Slawe, *Admitted Pro Hac Vice*
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001
E: michael.mctigue@skadden.com
E: meredith.slawe@skadden.com

I declare under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct.

Dated: November 5th, 2025 at Seattle, Washington.

*s/ William R. Burnside*
William Burnside, WSBA No. 36002

RESPONDENT ALEC BIRENBAUM'S RESPONSE TO
PETITION TO VACATE ARBITRATION AWARD – Page 35

BAILEY DUQUETTE P.C.
800 FIFTH AVENUE, SUITE 101-800
SEATTLE, WASHINGTON 98104
T 206.353.8021 | F 888.233.5869