THE HONORABLE JAMAL N. WHITEHEAD

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| VALVE CORPORATION,<br><br>               Petitioner,<br><br>        v.<br><br>ALEC BIRENBAUM,<br><br>               Respondent. | No. 2:25-cv-01975<br><br>**PETITIONER VALVE CORPORATION'S NOTICE OF SUPPLEMENTAL AUTHORITY REGARDING ITS PETITION TO VACATE ARBITRATION AWARD (DKT. 1)** |

PETITIONER VALVE CORPORATION'S
NOTICE OF SUPPLEMENTAL AUTHORITY
25-cv-01975

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

## <u>NOTICE OF SUPPLEMENTAL AUTHORITY</u>

Pursuant to Local Civil Rule 7(n), and in connection with Petitioner Valve Corporation's ("Valve") Petition to Vacate Arbitration Award (Dkt. 1), Valve respectfully submits as supplemental authority the attached decision of the United States District Court for the Central District of California: *SCPS LLC v. Kind Law*, No. CV 25-3255-MWF (SSCX), 2026 WL 96898 (C.D. Cal. Jan. 8, 2026). The supplemental authority is pertinent to the question of whether parties can enter into an agreement to change a contractually-specified forum to resolve pending claims, which is a disputed legal issue in this action as well as in ten other related actions before this Court.[1]

The court in *SCPS* enforced a forum provision in an updated arbitration agreement as to putative arbitration claimants who submitted pre-filing notices of dispute to commence arbitration before the updated agreement took effect. 2026 WL 96898 at *9-10. The agreement in place when the *SCPS* claimants submitted their notices of dispute provided that the parties must arbitrate disputes before the American Arbitration Association ("AAA"). *Id.* at *2. The updated agreement implemented after the *SCPS* claimants submitted their notices of dispute provided that the parties must arbitrate disputes before ADR Chambers. *Id.* The court enforced the updated agreement and ordered the *SCPS* claimants to arbitrate before ADR Chambers because (i) the claimants received notice of the updated agreement and assented to it and (ii) the updated agreement by its terms applied to already accrued, pending claims. *Id.* at *9-10. The court explained that "the result would be the same even if the [claimants] had assented [to the updated agreement] after initiating arbitrations with the AAA." *Id.* at *9. The court also rejected the *SCPS* claimants' contention that

---

[1] *Valve Corp. v. Abbruzzese*, No. 24-cv-1717, Dkt. 79 (W.D. Wash. filed Aug. 21, 2025); *In re Valve Antitrust Litig.*, No. 21-cv-00563, Dkt. 467 (W.D. Wash. filed June 11, 2025); *Smith v. Valve Corp.*, No. 25-cv-01478 (W.D. Wash. filed Aug. 5, 2025); *Welty v. Valve Corp.*, No. 25-cv-02450 (W.D. Wash. filed Nov. 10, 2025); *Aaron v. Valve Corp.*, 25-cv-02657 (W.D. Wash. filed Dec. 22, 2025); *Valve Corp. v. Fish*, No. 25-cv-01729 (W.D. Wash. filed Sept. 8, 2025); *Valve Corp. v. Graber*, No. 25-cv-01730 (W.D. Wash. filed Sept. 8, 2025); *Valve Corp. v. Lefebvre*, No. 25-cv-01731 (W.D. Wash. filed Sept. 8, 2025); *Valve Corp. v. Lucas*, No. 25-cv-01732 (W.D. Wash. filed Sept. 8, 2025); *Valve Corp. v. Vicente*, No. 25-cv-01976 (W.D. Wash. filed Oct. 11, 2025).

PETITIONER VALVE CORPORATION'S NOTICE
OF SUPPLEMENTAL AUTHORITY – 1
25-cv-01975

the plaintiff businesses went "'around counsel's back'" to obtain assent to the updated agreement.

*Id.*

DATED: January 21, 2026

<div style="margin-left: 40%;">

CORR CRONIN LLP

*s/ Blake Marks-Dias*
Blake Marks-Dias, WSBA No. 28169
1015 Second Avenue, Floor 10
Seattle, Washington 98104
(206) 625-8600 Phone
(206) 625-0900 Fax
bmarksdias@corrcronin.com

Michael W. McTigue Jr., *Pro Hac Vice Forthcoming*
Meredith C. Slawe, *Pro Hac Vice Forthcoming*
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001
michael.mctigue@skadden.com
meredith.slawe@skadden.com

*Attorneys for Petitioner Valve Corporation*

</div>

PETITIONER VALVE CORPORATION'S NOTICE
OF SUPPLEMENTAL AUTHORITY – 2
25-cv-01975

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

ATTACHMENT

2026 WL 96898
Only the Westlaw citation is currently available.
United States District Court, C.D. California.

SCPS LLC, et al.

v.

Kind Law, et al.

Case No. CV 25-3255-MWF (SSCx)
|
Filed 01/08/2026

**Attorneys and Law Firms**

Deputy Clerk: Rita Sanchez, Attorneys Present for Plaintiffs: None Present

Court Reporter: Not Reported, Attorneys Present for Defendant: None Present

**Proceedings (In Chambers):** ORDER RE: PLAINTIFFS' MOTION TO COMPEL ARBITRATION [18]; DEFENDANTS' MOTION TO DISMISS [35]; DEFENDANTS' APPLICATIONS TO SEAL [33] [61]

The Honorable MICHAEL W. FITZGERALD, U.S. District Judge

**\*1** Before the Court are the following Motions and Application:

- Motion to Compel Arbitration filed by Plaintiffs SCPS LLC and SSPS LLC on April 22, 2025. (Docket No. 18). Defendants Kind Law, et al. filed an Opposition on August 28, 2025. (Docket No. 35). Plaintiffs filed a Reply on October 10, 2025. (Docket No. 52).

- Motion to Dismiss filed by Defendants on August 28, 2025. (Docket No. 35). Plaintiffs filed an Opposition on October 10, 2025. (Docket No. 51). Defendants filed a Reply on November 3, 2025. (Docket No. 63). Plaintiffs filed an Objection to the Reply on November 7, 2025. (Docket No. 69).

- Application to Seal Exhibits 6, 7, and 25 to the Motion to Dismiss filed by Defendants on August 28, 2025. (Docket No. 33). Plaintiffs filed an Opposition to the Application to Seal Exhibits 6, 7, and 25 on October

10, 2025. (Docket No. 50). Defendants filed a Reply on November 4, 2025. (Docket No. 66).

- Application to Seal Exhibits A through I to the Reply filed by Defendants on November 3, 2025. (Docket No. 61). No Opposition or Reply was filed to the Application.

The Court has read and considered the papers on the motions and held a hearing on **November 17, 2025**.

The Court rules as follows:

- The Motion to Compel is **GRANTED** *in part* **and DENIED** *in part*. The Motion is **GRANTED** as to the "Wrong-Tribunal Claimants" because the operative arbitration agreement provides for arbitration before ADR Chambers in Ontario, Canada. The Motion is **DENIED** *as moot* as to the "Non-User Claimants" because Plaintiffs withdrew their challenges at the hearing.

- The Motion to Dismiss is **DENIED**. Nearly all arguments have been mooted by subsequent stipulations between the parties, and the arguments as to the "Wrong-Tribunal Claimants" are properly considered on the Motion to Compel.

- The Motions to Seal are **DENIED** because Defendants have not articulated compelling reasons to seal the documents.

## I. BACKGROUND

### A. Factual Background

Plaintiffs are SCPS LLC ("Zula") and SSPS LLC ("Sportzino"). (Docket No. 1 ("Complaint") ¶ 1). Plaintiffs operate "free-to-play social gaming websites administered from Ontario, Canada." (*Id.* ¶ 20). These gaming websites provide users with virtual "Gold" coins, free of charge, that allow users of the websites to play online games. (*Id.* ¶ 21).

Plaintiffs allege that only registered users may access and play the games on Zula and Sportzino's respective websites. (*Id.* ¶ 23). In order to register, Plaintiffs allege that users must "create an account through an online enrollment process." (*Id.* ¶ 24). As part of the enrollment process, Plaintiffs allege that users must "accept the Zula or Sportzino Terms & Conditions of Use Agreement ("Terms & Conditions") and Privacy Policy." (*Id.* ¶ 25). Plaintiffs further allege that acceptance is accomplished "through a traditional clickwrap agreement,

which requires users to affirmatively acknowledge they reviewed and accepted the Terms and Conditions before they can begin using Plaintiffs' websites." (*Id.*).

Plaintiffs allege that the Terms & Conditions contain certain specific relevant provisions. (*See id.* ¶¶ 27-31).

 **\*2** The first relevant provision informs users that Plaintiffs "may amend, alter, delete or add to this Agreement at any time without notice to you," and that any such changes "take effect immediately upon their publishing to the Website and your continued access or use of the Website." (*Id.* ¶ 27). Pursuant to this provision, Plaintiffs allege that when they implement such a change to the Terms & Conditions, "registered users are informed of the change during their next account login," and users are required to acknowledge that they have reviewed and agreed to the change. (*Id.* ¶ 28).

The next relevant provision is Section 12 of the Terms & Conditions, which Plaintiffs allege contains a mandatory arbitration provision. (*Id.* ¶ 29). In a revision dated May 7, 2024, Plaintiffs allege that the arbitration provision of the Terms & Conditions required arbitration before the American Arbitration Association ("AAA") in Washington, DC. (*Id.*). On June 28, 2024, however, Plaintiffs allege that they both revised the Terms & Conditions to require arbitration before ADR Chambers, rather than AAA, and required the arbitration to be held in Ontario, Canada. (*Id.* ¶ 30).

Plaintiffs thus allege that "[e]very user who logged into an account on or after June 28, 2024, accepted the revised Terms & Conditions requiring arbitration before ADR Chambers in Ontario, Canada." (*Id.* ¶ 31). This acceptance was allegedly effectuated when users clicked a "button labeled 'Confirm,' " which "affirmed 'that [the user has] read these documents and [the user] accept[s] all the updates within these documents.' " (*Id.*).

Plaintiffs then allege that law firms Kind Law and Ben Travis Law (the "Law Firms") conducted a social media advertising campaign to solicit clients to bring actions against myriad "social gaming websites," including Plaintiffs. (*Id.* ¶ 32). Plaintiffs allege that this mass solicitation effort failed to effectively weed out individuals who were never registered users of Plaintiffs' websites, and thus did not have a claim against Plaintiffs. (*Id.* ¶¶ 41, 42). Plaintiffs allege that following these advertising campaigns, which asked viewers of the ads to select from over 100 different games on over 20 different platforms, the Law Firms issued mass demands

to all relevant gaming companies without performing further investigation into whether the individuals were authorized users of the games. (*Id.* ¶¶ 43-46).

Plaintiffs thus allege that the Law Firms "began bombarding" Plaintiffs with "notices of dispute." (*Id.* ¶ 48). Plaintiffs allege that these notices were "in purported compliance with the Terms & Conditions' informal-dispute resolution requirement," although Plaintiffs do not elaborate in the Complaint on the contents of this putative provision. (*Id.*). Plaintiffs assert that the first batch of these notices were served on Plaintiffs on June 19, 2024, prior to the modification requiring arbitration before ADR Chambers, although more notices were served on August 27, 2024, and August 30, 2024. (*Id.* ¶ 49).

The Law Firms then initiated arbitrations by filing individual demands for arbitration with the AAA on August 14, 2024, against Zula, and on August 16, 2024, against Sportzino. (*Id.* ¶ 52). Plaintiffs allege that by that date, "the Terms & Conditions had been revised to require arbitration before ADR Chambers in Ontario, Canada, and did not permit arbitration before the AAA." (*Id.*). Since these arbitration demand filings, Plaintiffs allege that AAA has issued correspondence advising that it will apply Mass Arbitration Rules to the Demands, which Plaintiffs allege will result in "potentially enormous administrative fees of up to $1,525 per demand." (*Id.* ¶ 58). Accordingly, Plaintiffs allege that they face up to $1,460,625 in administrative fees from the original 966 demands before AAA, although the number of demands has since dropped to 689 following dismissal by the Law Firms of certain demands. (*Id.* ¶¶ 58, 62).

 **\*3** Following the filing of the demands with AAA, Plaintiffs conducted an investigation into the claimants. Plaintiffs allege that 121 of the demands were filed on behalf of claimants who are not registered users of the Plaintiffs' websites, and so never entered into any agreement with Plaintiffs to arbitrate before AAA. (*Id.* ¶ 63). Plaintiffs call these "Non-User Claimants." (*Id.*).

Plaintiffs further allege that another group of claimants "accepted revised terms and conditions" that would require arbitration before ADR Chambers in Ontario, Canada. (*Id.* ¶ 64). Plaintiffs allege this affects 401 of the demands filed with AAA, and calls this group of claimants the "Wrong-Tribunal Claimants." (*Id.*).

Based on these allegations, the Complaint seeks declaratory judgment as to both the "Non-User Claimants" and the "Wrong-Tribunal Claimants," naming these individual claimants as Defendants in this action. Specifically, the Complaint seeks declaratory judgment as to whether the Non-User Claimants had valid arbitration agreements with the Plaintiffs and whether the Wrong-Tribunal Claimants are bound by the modifications to the arbitration agreement to arbitrate before ADR Chambers in Ontario, Canada, as opposed to the American Arbitration Association ("AAA"). (Complaint ¶¶ 86, 88). The Complaint also seeks injunctive relief to enjoin these Defendants from further proceedings before the AAA against Plaintiffs, and to compel those arbitrations currently proceeding in AAA to be arbitrated before ADR Chambers, respectively. (*Id.* at 20).

### B. Procedural Background

On April 14, 2025, Plaintiffs SCPS LLC and SSPS LLC filed this action. (*See* Docket No. 1 (the "Complaint")).

The Motion to Compel was filed by Plaintiffs shortly after the Complaint on April 22, 2025, and was initially noticed for hearing on June 2, 2025. (Docket No. 18). On May 22, 2025, after no further filings were received—including no Opposition to the Motion to Compel—the Court vacated the hearing, finding the Motion suitable for submission on the papers without argument. (Docket No. 20).

The following day, on May 23, 2025, the parties filed a Stipulation for Order to Set a Briefing Schedule on the Motion, which was granted by the Court on May 27, 2025. (Docket Nos. 21, 22). The briefing schedule was further modified by stipulation on July 22, 2025, which re-set the hearing date for the current date, November 17, 2025. (Docket No. 30).

Pursuant to this briefing schedule, when Defendants filed their Opposition to the Motion to Compel, Defendants also filed their own Motion to Dismiss the Complaint. (Docket No. 35).

In the intervening months, as the parties briefed the Motion to Compel, the parties have stipulated to dismissal of various defendants. (*See* Docket Nos. 46, 58, 68). Accordingly, recognizing that these dismissals have narrowed the issues before the Court on these Motions, the parties jointly filed a Notice of Remaining Issues. (Docket No. 70 (the "Joint Notice")). The parties assert that the Court still must resolve: (1) whether Plaintiffs have arbitration agreements with certain

Defendants who were not users of Plaintiffs' products; and (2) whether Defendants currently proceeding before AAA should be compelled to arbitrate in Canada. (*See id.*).

The Court now considers Defendant's Motion to Dismiss and Plaintiffs' Motion to Compel in light of this procedural history and the Joint Notice.

## II. APPLICATION TO SEAL

**\*4**  Defendants filed two Applications to Seal documents in connection with their Opposition to the Motion to Compel and their Reply to the Motion to Dismiss. (Docket Nos. 34, 61). Plaintiffs oppose the sealing request as to the documents attached to the Opposition. (Docket No. 50). Defendants filed a response to Plaintiffs' Opposition. (Docket Nos. 64, 66).

"In this circuit, we start with a strong presumption in favor of access to court records. The common law right of access, however, is not absolute and can be overridden[.]" *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003) (citations omitted). Generally, a party seeking to seal documents "more than tangentially related to the merits of a case" must show "compelling reasons" for doing so. *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1101-02 (9th Cir. 2016) (instructing that the compelling reasons standard applies where "the motion at issue is more than tangentially related to the underlying cause of action").

The parties agree that the compelling reasons standard should apply to these requests for sealing. (Defendants' Application to Seal at 3; Plaintiffs' Opposition at 2). Under the compelling reasons standard, the party requesting sealing must show "compelling reasons supported by specific factual findings ... [which] outweigh the general history of access and the public policies favoring disclosure." *Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 678 (9th Cir. 2010). "The mere fact that the production of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records." *Kamakana v. City and County of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006).

### A. Exhibits to Opposition to Motion to Compel

In connection with the Defendants' Opposition to the Motion to Compel, Defendants argue for sealing as to three exhibits: Exhibits 6, 7, and 25. (*See* Docket No. 33-1).

As to Exhibit 25, Plaintiffs do not appear to oppose the request. According to Defendants, Exhibit 25 contains sensitive and highly personal information, as it reflects information about Defendants' online accounts with Plaintiffs, including purchase history. (*Id.* at 4-5). They also contain records pertaining to individual Defendants' online gambling activities, which Defendants argue are of a sensitive and highly personal nature. (*Id.*).

The Court does not agree that Exhibit 25 warrants sealing. As an initial matter, Defendants appear to have already redacted any identifying financial information from the records. Otherwise, Defendants have only presented one case to support their position, where a court held that records of illegal downloads of adult motion pictures were highly personal and sensitive and thus justified sealing. *See Strike 3 Holdings, LLC v. Doe*, CV 19-727-LB, 2019 WL 1118121, at *3 (N.D. Cal. March 11, 2019). But this holding was premised on the fact that disclosure would reveal the downloaders' sexual preferences. *Id.* Here, as opposed to the concerns from *Strike 3*, gambling does not prompt the same privacy concerns because gambling is not a quintessentially private act as the court reasoned in *Strike 3*. Indeed, gambling is traditionally an act that takes place in public. Accordingly, the Court holds that Defendants' concerns are more properly viewed as preventing mere "embarrassment" to Defendants, which is not a compelling reason that justifies sealing. *See Kamakana* at 447 F.3d at 1179.

**\*5** As to Exhibits 6 and 7, Defendants argue that these are subject to sealing because they are attorney-client communications. (Docket No. 33-1 at 3-4). Exhibit 6 contains excerpts and client signatures from an engagement letter, and Exhibit 7 contain additional "supplemental" communications to the engagement. Defendants claim these are "attorney-client communications" and thus confidential as a matter of law as privileged.

As to Exhibits 6 and 7, Plaintiffs are correct that federal courts have rejected the contention that engagement letters are privileged and thus subject to sealing. But as Defendants argue, Rule 501 provides that "in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." Accordingly, it appears that state privilege law applies here, as the rule of decision in this action turns on state contract law. And Defendants have presented applicable case law holding that communications protected by this privilege are documents that are "traditionally kept secret" and thus should be sealed.

*See Moreno v. SFX Entertainment, Inc.*, CV 14-0880 RSWL (CWx), 2015 WL 12683794, at *3 (C.D. Cal. Aug. 28, 2015).

But whether confidential or privileged, Defendants make no response to the argument that disclosure of these communications to Plaintiffs waived any privilege or confidentiality that existed. "Voluntary disclosure of a communication to a third person destroys confidentiality and constitutes a waiver of the privilege." *Griffith v. Davis*, 161 F.R.D. 687, 698 (C.D. Cal. 1995). It is true that in *Moreno*, the court saw fit to seal an attorney client communication (seeking legal advice) according to privilege, but that was a case of inadvertent disclosure that was unopposed by the adversarial party. *See* 2015 WL 12683794, at *1. Here, there is no indication that the disclosure of these putatively privileged or confidential communications to opposing counsel was such an inadvertent error, such that privilege was not voluntarily waived by Defendants with respect to these communications.

Accordingly, the Application to Seal the exhibits to Defendants' Opposition to the Motion to Compel (Docket No. 33-1) is **DENIED**.

**B. Exhibits to Reply to Motion to Dismiss**

Next, Defendants argue that Exhibits A through I to Defendants' Reply ISO Motion to Dismiss should be sealed. (Docket No. 61-1). According to Defendants, these include individual Defendants' "names, household sizes, and monthly incomes," and "connect individuals with illegal online gambling." (*Id.* at 2-3).

As discussed above, a connection to gambling is not highly sensitive information that constitutes a "compelling reason" to justify sealing. Although Defendants now make the claim that they are engaged in "illegal" gambling, the case law is clear that the fact that information may be incriminating does not subject it to sealing. *Kamakana*, 447 F.3d at 1179. Moreover, the names of these Defendants are already public, so may not be sealed.

As to income and household size, Defendants have still not presented any authorities supporting sealing of this information. As to income, the court in *Moujaes v. San Francisco City & Cnty.*, No. 15-CV-03129-DMR, 2017 WL 1540732, at *5 (N.D. Cal. Apr. 28, 2017) examined whether to seal income information under the less burdensome good cause standard, not the compelling reasons standard. And the decision in *Stanfield v. Tawkify, Inc.*, No. C 20-7000 WHA, 2021 WL 5758888, at *2 (N.D. Cal. Dec. 3, 2021) did not

even entail a discussion of sealing, and indeed quoted some income related amounts directly in the order.

**\*6** Accordingly, Defendants have not established compelling reasons to seal any of this information. The Application to Seal the exhibits to the Reply to the Motion to Dismiss (Docket No. 61-1) is **DENIED**.

### III. <u>MOTION TO DISMISS</u>

Because dismissing Plaintiffs' claims would potentially moot the Court's decision on the Motion to Compel, the Court will first address the Defendant's Motion to Dismiss.

As an initial matter, the Court agrees with the objections lodged by Plaintiffs on November 7, 2025, that the brief filed by Defendants entitled "Joint Memorandum in Support of Motion to Dismiss and Opposition to Motion to Compel" (the "Opposition" Docket No. 35-1)) contains very little argument directly relevant to the Motion to Dismiss standard. (*See* Plaintiffs' Objection to Evidence and Arguments First Submitted on Reply (Docket No. 69) at 7)). Instead, the arguments in the Opposition are particularly geared towards contract issues at the heart of the Motion to Compel, that: (a) Plaintiffs cannot prove assent to modification of the Terms & Conditions; (b) if there were a modification, the modification would not affect these claimants; and (c) any modification would be unenforceable. (Opp. at 6-16).

Nevertheless, there were some *limited* challenges putatively brought under Rule 12(b)(6) in the Opposition, although these now appear to be moot given the various stipulated dismissals:

- First, Defendants argue that Plaintiffs "do not state a claim" as to Plaintiffs' arguments that the Law Firms were not authorized by some claimants to file arbitration demands. (Opp. at 19). But the parties' Joint Notice to the Court stated that these arguments were resolved and need not be considered. (Joint Notice at 1).

- Second, Defendants argued that the Law Firms should be dismissed as Defendants under Rule 12(b)(6), but these arguments were likewise mooted by the stipulation to dismiss the Law Firm Defendants. (*See* Suppl. Opp. at 10; Joint Notice at 1).

- Third, Defendants advance another possible Rule 12 argument framed as one challenging the "ripeness" of Plaintiffs' claims as to those users who have not yet commenced arbitration. (Opp. at 16; Reply ISO MTD at 2-3). But again, these challenges appear to be to the group of Defendants who did not have advancing arbitrations and were dismissed. (Joint Notice at 1). While there is another "ripeness" argument as to other Defendants discussed below, the ripeness argument in the MTD appears to be mooted.

Finally, while Defendants insisted in their Reply and at the hearing that they have brought challenges under Rule 12(b)(6), the Court agrees with Plaintiffs that nearly all of these arguments continue to challenge the applicability of the arbitration agreements, not the sufficiency of the pleadings. Indeed, the Reply submitted in support of the Motion to Dismiss merely rehashes arguments as to why the modified arbitration provisions are not enforceable as to the Wrong Tribunal Defendants rather than articulating any Rule 12 basis for dismissal. (*See* Reply ISO MTD at 7-20). These arguments will be properly addressed below in considering the Motion to Compel Arbitration as to these Defendants.

The only potential remaining Rule 12(b)(6) challenge is Defendants' argument that there is not enough specificity in the Complaint as to which individual Defendants fall into the "Non-User Claimants" category. But at the hearing, Plaintiffs withdrew their arguments as to the Non-User Claimants, as Plaintiffs agreed they were properly identified through briefing on this Motion.

**\*7** Accordingly, the Motion to Dismiss is **DENIED** as to the Wrong Tribunal Defendants because those arguments are properly considered on the Motion to Compel. The Motion to Dismiss is **DENIED** *as moot* as to the remaining arguments.

### IV. <u>MOTION TO COMPEL</u>

#### A. <u>Legal Standard</u>

The Federal Arbitration Act ("FAA") requires the district courts to compel arbitration on all claims subject to arbitration agreements. *See Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) ("By its terms, the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." (citing 9 U.S.C. §§ 3, 4)). The FAA creates a general presumption in favor of arbitration and requires the enforcement of a written agreement to arbitrate. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24–25 (1991). A court must interpret arbitration provisions liberally, resolving

doubts in favor of arbitration. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983).

Under the FAA, a party moving to compel arbitration must show two things: "(1) the existence of a valid, written agreement to arbitrate; and, if it exists, (2) that the agreement to arbitrate encompasses the dispute at issue." *Ashbey v. Archstone Prop. Mgmt., Inc.*, 785 F.3d 1320, 1323 (9th Cir. 2015). The party seeking arbitration need only prove the existence of an agreement to arbitrate by a preponderance of the evidence. *Norcia v. Samsung Telecoms. Am.*, LLC, 845 F.3d 1279, 1283 (9th Cir. 2017). Because the FAA favors arbitration, the burden is on the plaintiff to prove that the arbitration agreement is, in fact, not enforceable. *See Mortensen v. Bresnan Commc'ns, LLC*, 722 F.3d 1151, 1157 (9th Cir. 2013) ("[T]hose parties challenging the enforceability of an arbitration agreement bear the burden of proving that the provision is unenforceable.").

### B. Discussion

Originally, Plaintiffs sought to enjoin the pending arbitrations of both the "Non-User Claimants" and the "Wrong-Tribunal Claimants." But at the hearing, Plaintiffs withdrew their motion as to the Non-User Claimants because Defendants had submitted further information that allowed Plaintiffs to verify whether these Defendants were users of the online game services. Accordingly, the Court **DENIES** *as moot* Plaintiffs' Motion to the extent it sought to enjoin the arbitrations of the "Non-User Claimants" listed in the Joint Notice of Remaining Issues. (*See* Docket No. 70 at Exhibit A). The Court will thus only address the parties' dispute as to the Wrong-Tribunal Claimants.

To state the obvious, unlike most Motions to Compel arbitration, neither party disputes that a binding arbitration agreement exists. The dispositive question here is **which** agreement governs. The parties agree that the issue of contract formation is properly before the Court. (MTC at 19; Opp. at 6).

The Supreme Court has articulated the "fundamental principle that arbitration is a matter of contract." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010). Consistent with this notion, section 2 of the Federal Arbitration Act ("FAA") provides that written arbitration provisions "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Defendants make several arguments here that the new provisions requiring arbitration before ADR Chambers

in Ontario, Canada do not control over the prior arbitration provision that required arbitration before the AAA: (1) Plaintiffs cannot prove assent to the modified terms; (2) the modification did not affect these disputes because they were already engaged in informal dispute resolution or arbitration; (3) the modified terms do not apply to these initiated disputes; (4) the modification is unenforceable because it is unconscionable; and (5) this dispute is not ripe.

### 1. Proof of Assent

**\*8** Defendants first argue that there was no meeting of the minds between the parties as to the ADR Chambers provisions for two reasons. First, Defendants argue that they opted out of the new provisions after assenting to them. (Opp. at 6-7). Second, Defendants take issue with the evidence presented by Plaintiffs supporting the users' assent to the ADR Chambers provisions. (*Id.* at 7). Both of these arguments are unpersuasive.

As to whether Defendants could opt-out, Plaintiffs respond that both versions of the TOS provided that a user could only opt out of arbitration upon their registration with the Plaintiffs' services and there was no additional opportunity to opt-out provided with each modification to the TOS. (Reply at 14). The Court agrees that the TOS contain this limiting principle. Specifically, Section 12.7 provides:

> "IF YOU HAVE NOT PREVIOUSLY AGREED TO AN ARBITRATION AGREEMENT IN CONNECTION WITH YOUR USE OF OUR SERVICE…YOU MAY OPT OUT OF THE ARBITRATION AGREEMENT."

(German Decl. Ex. C section 12.7 (May 2024 version); Ex. D section 12.7 (June 2024 version)). Accordingly, in both versions of the TOS, section 12.7 only provides for an opt-out opportunity if users "have not previously agreed to an arbitration agreement." Here, it cannot be disputed that the Wrong-Tribunal Claimants did not opt out of the arbitration provisions contained in the May 2024 agreement, as they now assert their claims in arbitration. Therefore, each of these Defendants has "previously agreed to an arbitration agreement" and thus may not take advantage of the opt-out provision at section 12.7 per the terms of the agreement.

Next, Defendants argue that Plaintiffs have not presented competent evidence of assent. District courts "ruling on a motion to compel arbitration must apply a 'standard similar to the summary judgment standard of [Rule] 56" when

considering the evidence presented with the motion. *See S.S. by and through Stern v. Peloton Interactive, Inc.*, 566 F. Supp. 3d 1019, 1044 (S.D. Cal. Oct. 7, 2021). Accordingly, the Court only considers whether the evidence could be presented in an admissible form at trial, and will not necessarily discount evidence on this Motion because it is presented in an inadmissible form. *See Sandoval v. Cnty. of San Diego*, 985 F.3d 657, 665 (9th Cir. 2021).

Plaintiffs have provided competent evidence that the Wrong-Tribunal Claimants assented to the TOS providing for ADR Chambers arbitration. Plaintiffs submit with their Motion a Declaration of Yuliy German, who asserts that he is the Senior Vice President of Business Operations for a corporation called Blazesoft. (Docket No. 18-14 ("German Decl.") at 2). Blazesoft, in turn, is an affiliate of Plaintiffs that provides "operational services" to Plaintiffs, "including the management of customer intake systems, maintenance of customer accounts and customer databases, and other interactions with customers." (*Id.* ¶ 5).

German asserts that he has knowledge of the contents of the arbitration agreements and the dates that each version went "live" on the websites. (*Id.* ¶ 10). German further testifies that users cannot log in to the websites without agreeing "that [the user has] read these documents and [ ] accept[s] all the updates within these documents." (*Id.* ¶ 20). Accordingly, Blazesoft employees acting at the direction of German performed a query of customer databases to identify which users had logged in to the website on or after June 28, 2024, and thus accepted the revised terms and conditions. (*Id.*). These are the users against whom Plaintiffs now seek to enforce the modified June 2024 provisions.

**\*9** German's declaration thus provides a basis for his knowledge about the modifications to the arbitration agreements and how the disputed users consented to the agreements, and thus could competently testify at trial as to this evidence. Moreover, as Plaintiffs point out in their Reply, Defendants have not rebutted any of this evidence, merely questioning its accuracy. (Reply at 15-16). Accordingly, the evidence is sufficient to demonstrate that the "Wrong-Tribunal" Defendants assented to the modified terms.

### 2. Notice of Disputes

Next, Defendants argue that the newer arbitration provisions did not supplant the old because Defendants had already provided notice of their claims pursuant to the old arbitration agreement. (Motion at 7-8, 13). It is an undisputed fact that each of the Wrong-Tribunal Claimants sent Plaintiffs notices of their disputes **prior to** the modification to the arbitration agreement that mandated arbitration in Canada. (Complaint ¶¶ 48-49). This notice was sent in compliance with the terms of Plaintiffs' arbitration agreement, which compelled an "informal dispute resolution" process before users could submit any claims to arbitration. (German Decl. at Ex. C (Docket No. 18-17)).

At the hearing, Plaintiffs pointed to *Trudeau v. Google*, 349 F. Supp. 3d 869 (N.D. Cal. 2018), as support for the proposition that the revisions changing the arbitral forum to ADR Chambers in Canada should control over the prior terms that dictated the AAA forum. In *Trudeau*, the court drew a distinction between the case law in California regarding changes to arbitration contracts that are accomplished via unilateral modification versus the scenario here, where modifications are accomplished via notice and consent. *Id.* at 879-81. While California case law is quite clear that unilateral modifications to arbitration agreements that purport to apply to already-pending disputes render the contract illusory, the same principle does not apply where the company "provided ample notice to the [users], required them to accept or decline, and gave them a valid opportunity to opt out." *Id.* at 881. Here, although there was no opportunity to opt out as discussed above, Defendants were provided notice of the modifications and assented to the terms, per the German Declaration.

Another case from a California Court of Appeal has also drawn the same distinction between unilateral modifications and notice and assent: *Franco v. Greystone Ridge Condominium*, 39 Cal. App. 5th 221, 252 Cal. Rptr. 3d 149 (2019). The court in *Franco* held that while unilateral changes to an arbitration agreement applying to "accrued or known" claims would render the contract illusory, a plaintiff who **assents** to the modification will be subject to the modified terms even for accrued or known claims. *Id.* at 156-58. The *Franco* court applied this principle to claims that were previously filed in court, but where the plaintiff assented to an arbitration provision in an employment agreement after initiating his lawsuit. *See id.* at 152-53. Therefore, while Defendants here argued at the hearing that it is possible the users agreed to the new provisions only after filing the arbitration, the result would be the same even if the users had assented after initiating arbitrations with the AAA.

Nonetheless, Defendants argue that Plaintiffs "manufactur[ed]" assent "around counsel's back" when Plaintiffs knew at the point they implemented the modified provisions that these Defendants were represented by counsel and intended to bring claims. (Opp. at 6-7). Defendants cite to *Dasher v. RBC Bank (USA)*, 882 F.3d 1017, 1023-24 (11th Cir. 2018) as support for this argument. (*Id.* at 7). *Dasher*, in turn, relies heavily on *Russell v. Citigroup, Inc.*, 748 F.3d 677, 680-81 (6th Cir. 2014). In both cases, the courts dealt with the issue of whether an arbitration provision could be enforced after litigation was already commenced, and held that the claims could not be compelled to arbitration. But in both cases, circumstances forced the courts to look to other indicia of intent by the parties. *See Dasher*, 882 F.3d at 1023 (court considered outside actions of the parties given that there was only implied acceptance of the contract via silence); *Russell*, 748 F.3d at 679-81 (scope of agreement was ambiguous). In looking to other communications between the parties, the courts held that the plaintiffs clearly and consistently resisted arbitration and asserted their rights to bring litigation, which supported the conclusion that the plaintiffs did not believe the contracts they accepted to limit their right to proceed in court. *Russell*, 748 F.3d at 680; *Dasher*, 882 F.3d at 1021-22.

 **\*10**  Here, by contrast, the language in the modified provisions is quite explicit that it should apply to pending disputes, as will be discussed more below. Accordingly, Defendants' assent to the new terms does not invite the same ambiguity as the assent in *Russell* and *Dasher*, and the Court need not look to extrinsic evidence as to what the parties intended by the contract. Although Defendants here resist this result, Plaintiffs have offered competent evidence that there was notice and assent and Defendants do not meaningfully dispute that they assented to the terms at least initially, although they improperly attempted to opt out of the agreement after the fact. (*See* Declaration of Michael Kind (Docket No. 37) ¶¶ 20-21).

Accordingly, the Wrong-Tribunal Claimants' assent to the modified arbitration provision cannot be overcome even though they had previously sent Plaintiffs notice of their claims.

### 3. Modified Terms' Applicability to Known Disputes

Defendants next attempt to argue that the plain language of the modified terms excludes those claims already known to Plaintiffs when the modifications went into effect. While

somewhat difficult to understand, Defendants argue that the modified terms only "changes the rules going forward," pointing to language in the modified agreement that "parties had to 'seek arbitration' at Chambers" and that these provisions thus only apply to "new 'initial' 'informal dispute resolution' efforts." (Opp. at 8).

But this argument is unavailing. The arbitration provision states in several places that the arbitration agreement applies to "past, **pending** or future disputes." (Ex. D § 12 (emphasis added)). Indeed, in the section entitled "SCOPE OF AGREEMENT TO ARBITRATE," the contract provides that the user and the company "agree that any past, **pending**, or future dispute, claim or controversy arising out of or relating to any purchase or transaction..., your access to or use of the Service,... shall be determined by arbitration, including claims that arose before acceptance of any version of this Agreement..." (*Id.* at § 12.2 (emphasis added)). This language instead clearly implicates that "pending" claims like those already proceeding through informal dispute resolution are to be resolved through the modified arbitration proceedings in ADR Chambers. The modified terms thus apply to these disputes.

### 4. Application of Convention

Of course, even if the modified terms are applicable to the Wrong Tribunal Defendants' claims, the question remains whether the agreement is enforceable. Defendants extensively argue that the modified provisions should be held unconscionable, but Plaintiffs respond that unconscionability is a question for the arbitrator rather than this Court under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958 (the "Convention"), codified in the FAA at 9 U.S.C. § 201.

According to Plaintiffs, if the Convention applies, then the only defenses that a court may adjudicate are those "that can be applied neutrally before international tribunals," "such as fraud, mistake, duress, and waiver." (MTC at 27 (citing to *Oakberry SD UTC, LLC v. Oakberry Acai, Inc.*, No. 23CV1883-BEN (MSB), 2024 WL 3463651, at \*5 (S.D. Cal. July 18, 2024)). Defendants do not seem to dispute that if the Convention applies, then the Court may not determine unconscionability of the modified contract. Rather, Defendants argue that the Convention should not apply to this dispute. (Opp. at 8-10).

"Courts address four factors to determine whether an arbitration agreement under the Convention should be enforced, i.e., whether '(1) there is an agreement in writing within the meaning of the Convention; (2) the agreement provides for arbitration in the territory of a signatory of the Convention; (3) the agreement arises out of a legal relationship, whether contractual or not, which is considered commercial; and (4) a party to the agreement is not an American citizen, or that the commercial relationship has some reasonable relation with one or more foreign states.' " *Valentino S.p.A. v. Mario Valentino S.p.A.*, CV19-06306 JAK (SSx), 2021 WL 6882327, at *7 (C.D. Cal. Apr. 9, 2021).

**\*11** Defendants seem to take issue only with the fourth factor, arguing both that the contract does not "envisage" performance abroad and that the contract is between two U.S. citizens. But as the fourth factor and the statute dictate, both parties may be U.S. citizens and the contract can still be subject to the Convention. *See* 9 U.S.C. § 202 ("An agreement ... arising out of such a relationship which is entirely between citizens of the United States shall be deemed not to fall under the Convention unless that relationship involves property located abroad, envisages performance or enforcement abroad, or has some other reasonable relation with one or more foreign states."). The relevant argument is thus whether the parties' commercial relationship bears some reasonable relation with a foreign state.

As the court discusses in *Ding v. Structure Therapeutics, Inc.*, 755 F. Supp. 3d 1200, 1209 (N.D. Cal. 2024), the Ninth Circuit has not provided guidance on what "reasonable relation" entails. The court in *Ding* thus followed Fifth Circuit precedent, *Soaring Wind Energy, L.L.C. v. Catic USA Inc.*, 946 F.3d 742 (5th Cir. 2020), which held that a "reasonable relation ... must be akin to involving property located abroad or envisaging performance or enforcement abroad—that is, the relationship must contemplate overseas action or involvement." *See* 755 F. Supp. 3d at 1209 (quoting *Soaring Wind Energy*, 946 F.3d at 752-53). Courts look to the "foreign character" of the arbitration agreement to determine whether a reasonable relation exists. *See id.* at 752. While it is "not enough" for one party to have a foreign corporate parent, the *Soaring Wind* court considered whether there were any foreign entities referenced in the agreement, where the agreement dictated arbitration should occur, and what substantive law governed the agreement. *Id.* at 753.

Here, as discussed extensively above, the operative agreement itself clearly contemplates enforcement abroad.

The agreement unambiguously calls for arbitration in Canada and has a choice of law provision that requires the application of Canadian law. (*See, e.g.*, Ex. D § 13.1). As in *Soaring Wind* and Defendants' own cited case, *John Zhang v. Dentons U.S. LLP*, CV 21-04682-RGK-JC, 2021 WL 2392169, at *3 (C.D. Cal. June 11, 2011), courts consider the arbitral forum and any choice of law provision germane to the question of whether "enforcement" is contemplated to take place abroad per the agreement. Accordingly, even if some aspects of the relationship between Plaintiffs and Defendants took place in the United States, it is clear that enforcement is related to Canada. There is thus a "reasonable relation" to a foreign signatory to the Convention, and the dispute is thus subject to the Convention.

And again, Defendants do not appear to argue against Plaintiffs' contention that unconscionability is a question for the arbitrator rather than the Court should the agreement be subject to the Convention. As explained in the Eleventh Circuit case *Bautista v. Star Cruises*, 396 F.3d 1289, 1302-1303 (2005), "[i]t is doubtful that there exists a precise, universal definition of the unequal bargaining power defense that may be applied effectively across the range of countries that are parties to the Convention, and absent any indication to the contrary, [the Court] decline[s] to formulate one." As in *Bautista*, Defendants here have not argued that unconscionability is such a defense under the Convention that may be "applied neutrally" on an international scale, and thus the Court declines to adjudicate the issue. *See id.*

This result is further bolstered by the orders of two other courts that have interpreted this precise modified agreement and have held both that the agreement is subject to the Convention and that, accordingly, the courts will not consider unconscionability defenses. (*See* Docket No. 57 (attaching Order from *Ambrosia, et al. v. Blazesoft Ltd.*, et al. Case No. 1:25-cv-01723 (E.D. Ill. Oct. 21, 2025)); Docket No. 72 (attaching Order from *Boatner v. Social Gaming LLC*, et al., No. 1:25-cv-032521 (S.D.N.Y. Nov. 25, 2025)).

### 5. Ripeness

**\*12** Finally, Defendants argue that the matter is not ripe for consideration given that the FAA requires "aggrieved" parties where the opposing party has "failed, neglected, or refused to arbitrate." (Opp. at 16). But the cases cited by Defendants concern scenarios where there was a pending arbitration in the *correct* arbitral forum, and thus are inapposite. In those

cited cases, the courts merely refused to adjudicate disputed questions that were properly before the correct arbitrator, and thus were not yet "ripe" for judicial review. *See LAIF X SPRL v. Axtel S.A. de C.V.*, 390 F.3d 194, 199 (2d Cir. 2004); *SCPS, LLC v. Law*, 770 F. Supp. 3d 11, 27-28 (D.D.C. 2025). Here, of course, there is no agreement that arbitration should proceed in one forum, hence the need for this litigation to decide this question. Moreover, in the prior case involving the same Plaintiffs in the District of D.C., the court only held that the claims were not ripe as to possible user claimants who had not yet filed in arbitration. *See SCPS*, 770 F. Supp. 3d at 27-28. As to the other similar group of "Wrong-Tribunal Claimants," the court held that their dispute was ripe for adjudication, as here. *Id.* at 27.

## V. CONCLUSION

The Motion to Compel is **GRANTED** *in part* as to the "Wrong-Tribunal Claimants." These Defendants are subject to the modified terms requiring them to arbitrate before ADR Chambers in Ontario, Canada. Because the arbitration agreement is subject to the Convention, the Court cannot adjudicate whether the modifications are unconscionable. The Motion to Compel is **DENIED** *in part as moot* as to the "Non-User" Defendants, as Plaintiffs withdrew their arguments at the hearing.

The Motion to Dismiss is **DENIED** *as moot* because the arguments were withdrawn or stipulated to by the parties, or were properly considered with the Motion to Compel.

**All Citations**

Slip Copy, 2026 WL 96898

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.